## MALLOY v. STATE OF SOUTH CAROLINA.

### ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 172. Argued March 5, 1915.—Decided April 5, 1915.

The constitutional inhibition on *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action and not to obstruct mere alterations in conditions deemed necessary for the orderly infliction of humane punishment. *Rooney* v. *North Dakota*, 196 U. S. 319.

A law is not *ex post facto* within the constitutional prohibition that mollifies the rigor of the criminal law; but only those laws that create or aggravate the crime or increase the punishment or change the rules of evidence for the purpose of conviction fall within the prohibition. *Calder* v. *Bull,* 3 Dall. 386.

A statute not changing the penalty of death for murder but only the mode of producing death, does not increase the punishment.

Producing death by electrocution instead of by hanging does not increase the punishment and is not unconstitutional under the *ex post facto* prohibition of the Federal Constitution; and so *held* as to the statute of South Carolina providing for punishment of murder by death produced by electrocution instead of hanging.

95 S. Car. 441, affirmed.

THE facts, which involve the constitutionality under the *ex post facto* provision of the Federal Constitution of the law of South Carolina relating to punishment for murder and altering of place and method of execution of the death sentence, are stated in the opinion.

*Mr. Charles L. Prince,* with whom *Mr. W. F. Stevenson* was on the brief, for plaintiff in error.

*Mr. F. H. Dominick,* with whom *Mr. Thomas H. Peeples,* Attorney General for South Carolina, was on the brief, for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

At the summer term, 1912, Court of General Sessions, Marlboro County, South Carolina, Joe Malloy was found guilty without a recommendation to mercy under an indictment charging him with the murder of Moore, November 24, 1910, and sentenced to death by electrocution in conformity to the Act of the Legislature approved February 17, 1912 (S. Car. Statutes at Large, 1912, p. 702),

the pertinent portions of which are in the margin.[1]   The judgment was affirmed by the Supreme Court of the State (95 S. Car. 441); the cause is here by writ of error; and a reversal is asked solely upon the ground that the enactment of 1912 materially changed the punishment for murder and therefore in respect of Malloy's offense is

---

[1] AN ACT TO PRESCRIBE THE METHOD OF CAPITAL PUNISHMENT IN SOUTH CAROLINA.

SEC. 1. Be it enacted by the General Assembly of the State of South Carolina, That after the approval of this act by the Governor all persons convicted of capital crime and have imposed upon them the sentence of death shall suffer such penalty by electrocution within the walls of the State Penitentiary, at Columbia, under the direction of the Superintendent of the Penitentiary instead of by hanging.

SEC. 2. The Board of Directors of the State Penitentiary are authorized and required to provide a death chamber and all necessary appliances for inflicting such penalty by electrocution and pay the costs thereof out of any funds in their hands.   The expense of transporting any such criminal to the State Penitentiary shall be borne by the county in which the offence was committed.

SEC. 3. Upon the conviction of any person in this State of a crime, the punishment of which is death, it shall be the duty of the presiding Judge to sentence such convicted person to death according to the provisions of this Act, and to make such sentence in writing, which shall be filed with the papers in the case against such convicted person, and a certified copy thereof shall be transmitted by the Clerk of the Court of General Sessions in which said sentence is pronounced to the Superintendent of the State Penitentiary, at Columbia.   .   .   .

SEC. 4. At such execution there shall be present the executioner and at least two assistants, the Penitentiary surgeon and one other surgeon, if the condemned person so desires, an electrician, the condemned person's counsel and relatives, if they so desire, ministers of the gospel, not exceeding three, if they so desire, and not less than twelve nor more than twenty-four respectable citizens of this State, to be designated by the executioner.

SEC. 5. .   .   .

SEC. 6. .   .   .

SEC. 7. That all Acts or parts of Acts inconsistent with this Act are hereby repealed.

Approved the 17th day of February, A. D. 1912.

*ex post facto* and in contravention of Art. I, § 10, of the Federal Constitution.

Under the South Carolina laws effective when the crime was committed the punishment for one found guilty of murder without recommendation to mercy was death by hanging within the county jail, or its enclosure, in the presence of specified witnesses. The subsequent act prescribed electrocution as the method of producing death instead of hanging, fixed the place therefor within the penitentiary, and permitted the presence of more invited witnesses than had theretofore been allowed.

In response to the meticulous objection based upon change of place for execution and increased number of witnesses it suffices to refer to what this court said through Mr. Justice Harlan in *Holden* v. *Minnesota*, 137 U. S. 483, 491, and *Rooney* v. *North Dakota*, 196 U. S. 319, 325, 326. The constitutional inhibition of *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action, and not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment.

The contention in behalf of plaintiff in error most earnestly relied on is this: Any statute enacted subsequent to the commission of a crime which undertakes to change the punishment therefor is *ex post facto* and unconstitutional unless it distinctly modifies the severity of the former penalty. "The courts cannot and will not undertake to say whether or not a change from hanging to electrocution is an increase or mitigation of punishment;" and therefore the act of 1912 cannot apply in the circumstances presented here. *Hartung* v. *People*, 22 N. Y. 95.

The often-quoted opinion of Mr. Justice Chase in *Calder* v. *Bull*, 3 Dall. 386, 390, 391, summarizes *ex post facto* laws within the intendment of the Constitution thus: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done,

criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive." Further expounding the subject, he adds: "But I do not consider any law *ex post facto*, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or increase the punishment, or change the rules of evidence, for the purpose of conviction." And to the general doctrine thus announced this court has continued to adhere.

In *Mallett* v. *North Carolina*, 181 U. S. 589, 597, Mr. Justice Shiras, speaking for the court, after reviewing former opinions, applied the established principles and concluded that the impeached legislation was not *ex post facto* since it "did not make that a criminal act which was innocent when done; did not aggravate an offence or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the time of the commission of the offence; and did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offence charged."

Considering the above stated settled doctrine and well known facts of which judicial notice is taken, we think the validity of the impeached act is clear.

Impressed with the serious objection to executions by hanging and hopeful that means might be found for taking life "in a less barbarous manner," the Governor of New York brought the subject to the attention of the legis-

lature in 1885; A commission thereafter appointed to ascertain the most humane and practical method of inflicting the death sentence reported in favor of electrocution. This was adopted by the statute of 1888 and, with the approval of the courts, has been in continuous use since that time. *In re Kemmler,* 136 U. S. 436; *People ex rel. Kemmler* v. *Durston,* 119 N. Y. 569.

Influenced by the results in New York eleven other States [1] have adopted the same mode for inflicting death in capital cases; and, as is commonly known, this result is the consequent of a well-grounded belief that electrocution is less painful and more humane than hanging. *Storti* v. *Commonwealth,* 178 Massachusetts, 549, 553; *State* v. *Tomassi,* 75 N. J. L. 739, 747.

The statute under consideration did not change the penalty—death—for murder, but only the mode of producing this together with certain non-essential details in respect of surroundings. The punishment was not increased and some of the odious features incident to the old method were abated.

In *Hartung* v. *People, supra,* the court had under consideration and condemned an act of the legislature which made a distinct addition to the penalty prescribed when the crime was committed; and the conclusion therein is not properly applicable in the circumstances of the present cause where there has been no such change.

The judgment of the court below is

*Affirmed.*

[1] Ohio, 1896; Massachusetts, 1898; New Jersey, 1907; Virginia, 1908; North Carolina, 1909; Kentucky, 1910; South Carolina, 1912; Arkansas, Indiana, Pennsylvania and Nebraska, 1913.