Alexander, J.
(concurring). I agree that County Court erred in admitting the testimony of Domenick M. and in denying the defense an opportunity to call the two investigators who initially interviewed the child victims. Accordingly, I concur in the majority decision to reverse defendant’s convictions on those grounds. I write separately, however, to express my disagreement with the majority’s conclusion that defendant’s conviction was not obtained in violation of the Ex Post Facto Clause. Amended Penal Law §§ 130.16 and 260.11 did more than remove a testimonial disability to the competency of the child witnesses; by eliminating the corroboration requirement, the amended statute reduced the amount of evidence necessary to establish defendant’s guilt beyond a reasonable doubt. As such, retroactive application of the amended statutes deprived the defendant of a substantial right and violated the Ex Post Facto Clause.
I
Effective November 1, 1984, the Legislature amended Penal Law §§ 130.16 and 260.11 to eliminate the corroboration requirement for the testimony of a victim of a sex offense for which lack of consent is based upon the victim’s age (L 1984, ch 89). Prior to this amendment, Penal Law § 130.16 provided:
"A person shall not be convicted of consensual sodomy, or an attempt to commit the same, or of any offense defined in this article of which lack of consent is an element but results solely from incapacity to consent because of the alleged victim’s age, mental defect, or mental incapacity, or an attempt to commit the same solely on the testimony of the alleged victim, unsupported by other evidence tending to:
"(a) Establish that an attempt was made to engage the alleged victim in sexual intercourse, deviate sexual intercourse, or sexual contact, as the case may be, at the time of the alleged occurrence; and
*60 “(b) Connect the defendant with the commission of the offense or attempted offense.”
Former section 260.11 of the Penal Law applied this corroboration requirement to charges of endangering the welfare of a child. These amendments were considered “vital for the effective prosecution of sex crimes against children” (L 1984, ch 89, Legislative Mem, 1984 McKinney’s Session Laws of NY, at 3129) and were intended to “correctQ [a] deficiency in the law” which prevented prosecutors from obtaining sufficient evidence for conviction (L 1984, ch 89, Executive Dept Mem, 1984 McKinney’s Session Laws of NY, at 3580).
Defendant was indicted and tried, after the effective date of the amendments to these statutes, on 16 counts of sexual abuse in the first degree and 9 counts of endangering the welfare of a child, which involved alleged incidents with eight boys. The boys, between the ages of 10 and 12, testified that defendant had touched their private parts on one or more occasions in defendant’s classroom. The testimony of seven of the boys was uncorroborated, while the testimony of Matthew L. was corroborated to the extent that David A. testified that on one occasion he saw defendant touching Matthew while Matthew was at defendant’s desk.
The incidents forming the basis of 19 of the 25 counts occurred before the effective date of the amendments to former sections 130.16 and 260.11 of the Penal Law. Defendant argued, first in a pretrial motion under CPL 190.65 to dismiss the indictment for insufficient evidence, and later in a motion to dismiss for failure to establish a prima facie case, that retroactive application of amended Penal Law §§ 130.16 and 260.11 to his trial on these counts was ex post facto. County Court denied both motions and applied the amended statutes. Defendant was subsequently convicted on all the charged counts.
II
Article I of the United States Constitution provides that neither Congress nor any State shall pass any "ex post facto law” (US Const, art I, § 9, cl 3; § 10, cl 1). As the Supreme Court recently noted (see, Miller v Florida, 482 US 423, 429-431), our understanding of the clause is derived from Justice Chase’s opinion in Calder v Bull (3 Dallas [3 US] 386, 390 [1798]) which described four types of laws as ex post facto: "1st. Every law that makes an action done before the *61 passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.” Justice Chase further noted (at 391): “But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or increase the punishment, or change the rules of evidence, for the purpose of conviction”.
Calder and subsequent cases identified several policies served by the prohibition of ex post facto legislation. First, the clause was intended to curb arbitrary and oppressive abuses of legislative power (Calder v Bull, 3 Dallas [3 US], at 390, supra; Miller v Florida, 482 US, at 429-431, supra; Weaver v Graham, 450 US 24, 29; Dobbert v Florida, 432 US 282, 293; Beazell v Ohio, 269 US 167, 171; Malloy v South Carolina, 237 US 180, 183), and particularly “ 'to secure substantial personal rights against arbitrary and oppressive legislation’ ” (Dobbert v Florida, 432 US, at 293, supra; Beazell v Ohio, 269 US, at 171, supra; Malloy v South Carolina, 237 US, at 183, supra). Second, the clause serves the policy of ensuring that legislative enactments " 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed’ ”, thus giving the populace notice of what conduct is criminal (Miller v Florida, 482 US, at 430, supra [quoting Weaver v Graham, 450 US 24, 28-29, supra]). Third, the clause "upholds the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law” (Weaver v Graham, 450 US, at 29, n 10, supra).
Miller v Florida (482 US, at 430, supra [quoting Weaver v Graham, 450 US 24, 29, supra]) articulated the current test for determining when a law is ex post facto: the law must be " 'retrospective’ ” and " 'it must disadvantage the offender affected by it.’ ” Merely procedural changes, however, which “ 'do not affect matters of substance’ ” (Dobbert v Florida, 432 US, at 293, supra), are not ex post facto even if they disadvantage the offender. Nevertheless, a change *62 in the law which deprives the accused of a substantial right is ex post facto because it is "not merely procedural, even if [it] takes a seemingly procedural form” (Weaver v Graham, 450 US, at 29, n 12, supra; see also, Miller v Florida, 482 US, at 430, supra; Kring v Missouri, 107 US 221, 232).
Here, there is no question that amended Penal Law §§ 130.16 and 260.11 were applied retroactively to disadvantage the defendant. The former Penal Law provided that no person could be convicted of an offense defined in Penal Law article 130, of which lack of consent was an element, based solely on the testimony of the alleged victim (Penal Law former §§ 130.16, 260.11). Instead, such testimony was not sufficient to support a conviction unless it was corroborated by other evidence establishing the offense and connecting the defendant with its commission (Penal Law former § 130.16). The amended Penal Law eliminated this corroboration requirement, and its application to defendant’s case resulted in his conviction on 18 of the 19 affected counts absent any corroboration of the victim’s testimony. The issue, then, is whether the amended Penal Law’s repeal of the corroboration requirement was, as the People contend, merely a change in procedure, or a change that deprived the defendant of a substantial right and therefore ex post facto.
The majority, however, refuses to address this issue, concluding that the substantial rights analysis "has no application in this case” because the corroboration requirement is a rule of evidence (majority opn, at 50). They base this sweeping conclusion merely on the assertion that the Supreme Court has twice rejected ex post facto challenges to changes in rules of evidence. This reasoning misconstrues the Supreme Court case law which has always employed the substantial rights analysis in considering ex post facto challenges to changes in evidentiary rules. Kring v Missouri (107 US 221, supra) held that a change in an evidentiary rule which eliminates a complete defense to a criminal charge deprives the defendant of a substantial right and is ex post facto if retroactively applied. There, the court struck down the retroactive abrogation of an evidentiary rule treating a defendant’s conviction of a lesser included offense as conclusive evidence of innocence on the greater offense (id., at 228-229). Hopt v Utah (110 US 574) and Thompson v Missouri (171 US 380), relied on by the majority, also employed the substantial rights analysis, but determined that the evidentiary changes at issue there were *63 not ex post facto because they did not deprive the defense of any substantial rights. The majority offers no justification for its departure from this established case law; indeed, they cannot explain why retroactive changes in evidentiary rules should be subject to a different constitutional analysis than any other seemingly procedural changes. Moreover, application of the proper constitutional analysis here leaves no doubt that the retroactive repeal of the corroboration requirement deprived the defendant of a substantial right.
While the difference between substance and procedure may sometimes be "elusive” (Miller v Florida, 482 US, at 433, supra), changes in evidentiary rules such as the corroboration requirement of Penal Law former §§ 130.16 and 260.11 must be considered in light of the explicit language of Calder v Bull (3 Dallas [3 US], at 390, supra) which recognizes as ex post facto: "Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.” Hopt (110 US, at 590, supra), holding that the retroactive application of a statute permitting the admission of previously barred testimony did not deprive the defense of a substantial right, distinguished the situation described in Calder. Hopt specifically noted that a change increasing the class of persons competent to testify did not authorize a conviction upon less evidence, explaining: "Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon ex post facto laws. But alterations which do not * * * change the ingredients of the offence or the ultimate facts necessary to establish guilt, but — leaving untouched * * * the amount or degree of proof essential to conviction — only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only * * * and which the State, upon grounds of public policy, may regulate at pleasure” (110 US, at 590, supra [emphasis added]). The import of Hopt, then, is that those changes in the legal rules of evidence which allow conviction upon a lesser amount or degree of proof deprives the defense of a substantial right and are ex post facto. Contrary to the majority’s assertion, this rule does not require that all retroactive changes in the rules of evidence be treated as ex post facto. Thompson v Missouri (supra) explained that *64 an evidentiary change deeming a previously inadmissible type of evidence admissible did not deprive the accused of a substantial right when the change did not authorize conviction upon less proof and was applied equally to the defense and the prosecution (171 US, at 387-388, supra). Further, in People v Nival (33 NY2d 391, 396), we followed this rule, upholding the retroactive application of a statute permitting the admission of a trial witness’ previously inadmissible identification testimony. We concluded that the statute was not ex post facto because it did not "change the rules of evidence so as to require a lesser amount of evidence or evidence of different facts in order to convict” (id.).
Here, the corroboration requirement eliminated by the amended Penal Law is among the types of retroactive evidentiary changes prohibited by Calder. The former Penal Law provided that no conviction could be obtained absent the requisite corroborating evidence (see, Penal Law former §§ 130.16, 260.11). The amendments, therefore, changed the rule of evidence to reduce the amount of evidence necessary for conviction and thus to satisfy the reasonable doubt standard. Under the plain meaning of Calder therefore, they are ex post facto. In changing the amount of evidence required to satisfy the reasonable doubt standard, they impaired defendant’s right to require the People to prove his guilt beyond a reasonable doubt, a right which is unquestionably substantial (see, In re Winship, 397 US 358 [due process requires proof of criminal charge beyond a reasonable doubt]). Further, unlike Hopt and Thompson v Missouri (supra), this change did not apply equally to the prosecution and the defense; it was intended to and did benefit only the prosecution by making it easier to convict accused sex offenders (see, L 1984, ch 89, Executive Dept Mem, 1984 McKinney’s Session Laws of NY, at 3580). Most jurisdictions considering the issue conclude, and I agree, that a retroactive abrogation of a corroboration requirement deprives a criminal defendant of a substantial right and is ex post facto (see, Government of Virgin Is. v Civil, 591 F2d 255 [3d Cir]; Bowyer v United States, 422 AD2d 973 [DC Ct App]; State v Schreuder, 726 P2d 1215 [Utah]; State v Byers, 102 Idaho 159, 627 P2d 788).
Those jurisdictions holding otherwise (see, Murphy v Sowders, 801 F2d 205 [6th Cir]; Murphy v Commonwealth, 652 SW2d 69 [Ky]; see also, People v Spearman, 128 Misc 2d 112), reason that the abrogation of a corroboration requirement simply enlarges the class of persons competent to testify and *65 under Hopt is not ex post facto. Thus, Spearman (128 Misc 2d, at 115, supra), held that the Ex Post Facto Clause did not prohibit the retroactive abrogation of the corroboration requirement at issue here, reasoning that, as in Hopt, the corroboration requirement was merely a testimonial disability of the child victims. In Hopt (110 US 574, supra), however, the permissible retroactive change authorized the admission of the testimony of convicted felons, who, at common law were not competent to testify (see, Richardson, Evidence §§ 386, 393 [Prince 10th ed]). Unlike a witness’ status as convicted felon, the corroboration requirement does not relate to the competency of the witness to testify; rather, it relates to the amount of proof necessary to satisfy the reasonable doubt standard. Penal Law former § 130.16 provides simply that "[a] person shall not be convicted * * * solely on the testimony of the alleged victim, unsupported by other evidence tending to” establish the offense and identify the defendant with its commission. That statute imposed a "testimonial disability” only in the sense that the victim’s testimony, alone, was not legally sufficient evidence to sustain a conviction (see, People v Linzy, 31 NY2d 99). This clearly is not the testimonial disability contemplated by Hopt; thus, the repeal of the corroboration requirement does not fall squarely within the rule of Hopt because it does not simply enlarge the class of persons competent to testify.
The majority argues that the Hopt prohibition of conviction upon "less proof, in amount or degree” (110 US, at 590, supra [emphasis added]) refers only to retroactive reductions in the People’s burden of proof and therefore is inapplicable here. This argument is flawed in several respects. First, this interpretation of Hopt ignores its plain language which indicates that the concepts of "amount of proof’ and "degree of proof’ are distinct and that the Ex Post Facto Clause bars retroactive reductions in either. Second, nothing in either Hopt or Calder supports the majority’s attempt to dismiss the plain reference to "amount * * * of proof’ as relating merely to an outdated English common-law concept of the "rule of number” (see, majority opn, at 52, 53). While Calder’s description of the abuses of the British Parliament referred to the admission of "one witness, when the existing law required two” (Calder v Bull, 3 Dallas [3 US], at 389, supra), there is no indication that in interpreting the United States Constitution to bar the retroactive application of laws which "change the rules of evidence, for the purpose of conviction” (id., at 391), the court *66 referred only to the rule of number. Similarly, there is no indication that Hopt’s prohibition of retroactive reductions in the "amount of proof’ refers to the English "rule of number”. Third, the majority cannot fairly avoid the rule of Hopt by urging that the concepts of "amount of proof’ and "degree of proof’ are the same. While the concepts are plainly distinct, they are, as discussed above, related. Here, the repeal in the corroboration requirement resulted in less evidence both in amount and degree because the repeal changed the definition of evidence legally sufficient to satisfy the reasonable doubt standard of proof.
Finally, the retroactive application of amended Penal Law §§ 130.16 and 260.11 to defendant’s trial does not satisfy the Constitution simply because defendant had ample notice that his conduct was criminal and could be punished within legislatively prescribed guidelines. Although the clause was intended to give fair warning of the effects of criminal statutes, it was also intended to secure substantial personal rights against arbitrary and oppressive legislation, even when that legislation takes a seemingly procedural form. (Dobbert v Florida, 432 US, at 293, supra; Beazell v Ohio, 269 US, at 171, supra; Malloy v South Carolina, 237 US, at 183, supra.) Furthermore, the Supreme Court has twice held that seemingly procedural changes, which did not change the elements of the crime or the prescribed punishment, deprived the defense of substantial rights and were ex post facto (see, Thompson v Utah, 170 US 343, supra [retroactive change in number of jurors is ex post facto]; Kring v Missouri, 107 US 221, supra [retroactive change in evidentiary presumption is ex post facto]).
Here, the retroactive application of amended Penal Law §§ 130.16 and 260.11 was a change in the rules of evidence authorizing a conviction upon less evidence. This change impaired the defendant’s substantial right to require the People to prove his guilt beyond a reasonable doubt by changing the definition of the amount of evidence that satisfies that standard. Accordingly, I conclude that defendant’s conviction was unconstitutionally obtained because the retroactive abrogation of the corroboration requirement, as applied to defendant, was ex post facto.