RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0414P (6th Cir.)
File Name: 02a0414p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 01-1747

LJUPCO RISTOVSKI,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-80463—Bernard A. Friedman, District Judge.

Argued: September 12, 2002

Decided and Filed: December 4, 2002

Before: BOGGS and COLE, Circuit Judges; BELL, Chief
District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Harold Z. Gurewitz, GUREWITZ & RABEN,
Detroit, Michigan, for Appellant. Ross I. MacKenzie,
ASSISTANT UNITED STATES ATTORNEY, Detroit,

———————————

[*] The Honorable Robert Holmes Bell, Chief United States District
Judge for the Western District of Michigan, sitting by designation.

1

Michigan, for Appellee. **ON BRIEF:** Harold Z. Gurewitz, GUREWITZ & RABEN, Detroit, Michigan, for Appellant. Ross I. MacKenzie, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

BELL, District Judge.    Defendant-Appellant Ljupco Ristovski appeals the district court order denying his motion for new trial filed under FED. R. CRIM. P. 33.

Ristovski was convicted by a jury on October 15, 1997, of two counts of subscribing false corporate tax returns in violation of 26 U.S.C. § 7206(1) and eight counts of submitting false documents to the Internal Revenue Service in violation of 26 U.S.C. § 7207. Ristovski was sentenced on June 16, 1998, to 18 months imprisonment. His conviction and sentence were affirmed on April 18, 2000. *United States v. Ristovski*, Nos. 98-1749 & 98-1868 (6th Cir. Apr. 18, 2000). His petition for writ of *certiorari* was denied on December 4, 2000, and the mandate was issued by the Court of Appeals on December 10, 2000.

On March 19, 2001, Ristovski filed a motion for new trial on the basis of newly discovered evidence. The district court, in an oral opinion, denied the motion for lack of jurisdiction because it was untimely. The district court noted that even if it did have jurisdiction, it would deny the motion on the merits because the evidence could have been discovered earlier and was cumulative. The written order denying Ristovski's motion for new trial was entered on June 4, 2001.

Motions for new trial are governed by Rule 33 of the Federal Rules of Criminal Procedure. Prior to December 1, 1998, Rule 33 required that motions for new trial based on newly discovered evidence be brought within two years after

*Dobbert*, 432 U.S. at 294 (quoting *Hopt*, 110 U.S. at 589-90). Accordingly, we affirm the district court's application of Rule 33 as amended and its determination that Ristovski's motion for new trial was untimely.

Because we affirm the district court's determination that the motion for new trial was untimely, we need not address Ristovski's alternative arguments that the district court abused its discretion when it entered its alternative finding that Ristovski was not entitled to relief on the merits of his motion for new trial.

In summary, we **AFFIRM** the district court's denial of Defendant-Appellant Ristovski's motion for new trial.

final judgment.[1] Ristovski's motion for new trial, which was filed on March 19, 2001, would have been timely under the Rule 33 in effect at the time the offense was committed because it was filed within two years after final judgment. Amendments to Rule 33 were promulgated on April 24, 1998, and went into effect on December 1, 1998. Rule 33 as amended requires that motions for new trial based on newly discovered evidence be brought within three years after the verdict or finding of guilty.[2] The purpose of the amendments

---

[1]Prior to the December 1, 1998 amendments, Rule 33 read as follows:

> The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

FED. R. CRIM. P. 33 (1997).

[2]Rule 33, after the 1998 amendments, provides:

> On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require. If trial was by the court without a jury, the court may – on defendant's motion for new trial – vacate the judgment, take additional testimony, and direct the entry of a new judgment. A motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty. But if an appeal is pending, the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

FED. R. CRIM. P. 33.

to Rule 33 was to bring uniformity in the manner in which the time period for new trial motions based on newly discovered evidence was calculated.[3] Ristovski's motion for new trial is untimely under the amended Rule 33 because it was filed approximately five months after the three-year period measured from the date of his verdict.

Ristovski's first argument on appeal is that the district court's conclusion that his motion for new trial was untimely under Rule 33 as amended in 1998 violates the Ex Post Facto Clause of the United States Constitution.[4] The timeliness of Appellant's motion for new trial is a threshold question because if a motion for new trial is untimely, the court lacks jurisdiction to consider it on the merits. *United States v. Koehler*, 24 F.3d 867, 869 (6th Cir. 1994) (citing *United States v. Smith*, 331 U.S. 469, 475-76 (1947)). *See also United States v. Moreno*, 181 F.3d 206, 212 (2d Cir. 1999) (court lacks jurisdiction to consider untimely motion for new

---

[3]The Advisory Committee explained that using the date of the "final judgment" as the triggering event caused disparity in the amount of time available for a defendant to file a motion for new trial in the event of an appeal because some courts measured the two-year period from the date of the appellate court's judgment and other courts from the date of its mandate:

It is the intent of the Committee to remove that element of inconsistency by using the trial court's verdict or finding of guilty as the triggering event. The change also furthers internal consistency within the rule itself; the time for filing a motion for new trial on any other ground currently runs from that same event.

FED. R. CRIM. P. 33 Advisory Committee Notes, 1998 Amendments. The time period for filing motions for new trial was expanded from two years to three years "to compensate for what would have otherwise resulted in less time than that currently contemplated in the rule for filing such motions." *Id.*

[4]Article I of the United States Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." U.S. CONST., art. I, § 9, cl. 3; art. I, § 10, cl. 1.

---

to make its decision on constitutional ex post facto grounds. At the time the amendments to Rule 33 were promulgated, the Supreme Court specified that the amendments would apply to all pending criminal cases "insofar as just and practicable." Supreme Court Order 98-17, April 24, 1998. The *West* court could have avoided the constitutional issue by following *United States v. Jean*, 1999 WL 301652 (N.D. Ill. Apr. 29, 1999), and holding that it would not be "just and practicable" to apply the amended Rule 33 to cases where the three years expired before the effective date of the amended rule.

Unlike the defendants in *West* and *Jean*, Ristovski's ability to file a motion for new trial on the basis of newly discovered evidence was not eliminated by the application of amended Rule 33. There was no denial of his substantive right to file a motion for new trial. The only effect of the amendment was to decrease the time frame in which he could file his motion. Ristovski was convicted on October 15, 1997. After Rule 33 was amended on December 1, 1998, Ristovski still had until October 15, 2000, more than nineteen months, to file a motion for new trial on the basis of newly discovered evidence. Because he had ample time to bring his motion for new trial, application of Rule 33 to him was just and practicable. Application of the time limitation under amended Rule 33 merely changed the mode of procedure. It did not assign "more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred," *Weaver*, 450 U.S. at 31 n.13, nor did it affect matters of substance or alter substantial personal rights of the defendant. *See Miller*, 482 U.S. at 430. Like the Court in *Dobbert*, we find that the following language from *Hopt* summarizes our conclusion that the change was procedural and not a violation of the Ex Post Facto Clause:

The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute.

33 resulted in a procedural change, not an increase in punishment, and that its application to a defendant who was convicted in 1994 did not constitute an ex post facto violation. *United States v. Tavizon*, Nos. 97-50512, 99-50076, 99-50315, 99-50756, 722, 2001 WL 38416, at *4 (9th Cir. Jan. 16, 2001).[6]

We are aware of only one case that has held the application of amended Rule 33 to constitute an ex post facto violation. In *United States v. West*, 103 F. Supp. 2d 1301 (N.D. Ala. 2000), the district court found that the change made in Rule 33 while the defendant's appeal was pending was a "substantive change" because it constituted "a very material alteration in the procedural rights of persons who claim to be entitled to a new trial because of newly discovered evidence." *Id.* at 1303. The court accordingly held that the retroactive application of the amended rule while a defendant's appeal was pending violated the ex post facto provision. *Id.*

It is significant that in *West* the defendant was sentenced in November 1995. Accordingly, if amended Rule 33 were applied to his case, his three-year period for filing a motion for new trial on the basis of newly discovered evidence would have expired before the amendments to Rule 33 even went into effect. The district court was appropriately concerned about the fairness of applying amended Rule 33 when to do so would eliminate the defendant's opportunity to file a motion for new trial. However, the court in *West* did not have

---

[6] This court, in an unpublished opinion, applied amended Rule 33 to bar a 1999 motion for new trial on a 1994 conviction that had become final in 1996. *United States v. Blue*, No. 99-4131, 2000 WL 1800499 (6th Cir. Nov. 30, 2000). Because the motion would have been untimely under either the old or the amended Rule 33, it was unnecessary in *Blue* to consider the ex post facto implications of applying Rule 33 as amended. At least two other courts have similarly applied amended Rule 33 to cases where the verdicts were rendered before the effective date of the amendment, without discussion. *See United States v. Robinson*, No. 00-10038, 2001 WL 180559 (9th Cir. Feb. 22, 2001); *United States v. Camacho*, No. S12 94 CR. 313, 1999 WL 1084229 (S.D. N.Y. Dec. 1, 1999).

trial) (citing cases). Whether the district court's application of amended Rule 33 was a violation of the Ex Post Facto Clause is a legal question we review *de novo*. *See United States v. Futrell*, 209 F.3d 1286, 1289 (6th Cir. 2000) ("A defendant's claim that his or her sentence was imposed in violation of the ex post facto clause presents a question of law, and we review questions of law de novo" (quoting *United States v. Logal*, 106 F.3d 1547, 1550-51 (11th Cir. 1997))).

The Ex Post Facto Clause forbids Congress to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (footnote omitted) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26 (1867)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29 (footnote omitted). *See also Kellogg v. Shoemaker*, 46 F.3d 503, 509 (6th Cir. 1995).

With respect to the first element, retrospective application, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver*, 450 U.S. at 31. "The focus in determining whether a new law violates the *ex post facto* clause is the time the offense was committed." *Kellogg*, 46 F.3d at 509 (citing *Weaver*, 450 U.S. at 31). In this case the offenses were committed in 1990, 1991, and 1997. Rule 33 was amended in December 1998. The district court's application of the time limitation in amended Rule 33 was retrospective because it changed the criminal review procedure for offenses occurring before the date of its enactment.

Retrospective application alone, however, is not enough to make out an ex post facto violation. The Ex Post Facto Clause does not guarantee that a criminal defendant's case will be governed in all respects by the law in force when the crime was committed. *Dobbert v. Florida*, 432 U.S. 282, 293

(1977). "[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, *see Malloy v. South Carolina*, 237 U.S. 180, 183 (1915), and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Dobbert,* 432 U.S. at 293 (quoting *Beazell v. Ohio*, 269 U.S. 167, 171 (1925)). Thus, no ex post facto violation occurs if a change does not alter "substantial personal rights," but merely changes "modes of procedure which do not affect matters of substance." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Dobbert*, 432 U.S. at 293). "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Dobbert*, 432 U.S. at 293. *See also Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.28 (1994) ("While we have strictly construed the Ex Post Facto Clause to prohibit application of new statutes creating or increasing punishments after the fact, we have upheld intervening procedural changes even if application of the new rule operated to a defendant's disadvantage in the particular case."). On the other hand, a change in the law that alters a substantial right can be ex post facto "even if the statute takes a seemingly procedural form." *Weaver*, 450 U.S. at 29 n.12 (citing *Thompson v. Utah*, 170 U.S. 343, 354-55 (1898); *Kring v. Missouri*, 107 U.S. 221, 232 (1882)).

The Supreme Court has recognized that the distinction between substance and procedure might sometimes prove elusive. *Miller*, 482 U.S. at 433. The general rule that has emerged from the case law, however, is that a change is procedural, and does not affect a substantial right if the change does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Weaver*, 450 U.S. at 31 n.12 (quoting *Hopt v. Utah*, 110 U.S. 574, 590 (1884)). Thus, in *Weaver* the Court found that Florida's revised good-time provision violated the Ex Post Facto Clause because it constricted an inmate's opportunity to earn early release, and thereby made "more onerous the punishment for crimes committed before its enactment." 450 U.S. at 35-36. In *Miller* the Court held

that because a change in the sentencing guidelines after the offense was committed increased the number of primary offense points assigned to sexual offenses by 20%, the change could not be deemed procedural because it "directly and adversely" affected the sentence the petitioner would receive. *Miller*, 482 U.S. at 433-35. In *Dobbert*, on the other hand, the Court rejected the petitioner's argument that changes in the Florida death penalty statute posed an ex post facto violation: "[T]he change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Id.* at 293-94.[5] The *Dobbert* Court compared the case before it to *Hopt v. Utah*, 110 U.S. 574 (1884), in which the Court considered a change in the rules of evidence between the date of the offense and the date of the trial: "Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict." *Dobbert*, 432 U.S. at 293 (citing *Hopt*, 110 U.S. at 589).

We analyze Appellant's claim that the retroactive application of amended Rule 33 violated the Ex Post Facto Clause with these principles in mind.

The question of whether the retroactive application of Rule 33 is substantive or procedural has not been widely addressed in the case law. The Ninth Circuit, in an unpublished decision, held that the 1998 amendments to Rule

---

[5]Under the former procedure the imposition of the death penalty was presumed unless the jury made a recommendation for mercy. Under the new procedure there was a separate sentencing hearing where the defendant could present mitigating evidence. The jury would render an advisory verdict based upon its perception of aggravating and mitigating factors in the case, after which the Court would make the final sentencing determination. *Dobbert*, 432 U.S. at 294-95.