RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DAVID E. MILLER; NICHOLAS TODD SUTTON; STEPHEN
MICHAEL WEST; TERRY LYNN KING,

     *Plaintiffs-Appellants*,

  *v.*

TONY PARKER, Commissioner, Riverbend Maximum
Security Institution, in his official capacity; TONY
MAYS, Warden, Riverbend Maximum Security
Institution, in his official capacity,

     *Defendants-Appellees*.

No. 18-6222

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:18-cv-01234—William Lynn Campbell, Jr., District Judge.

Decided and Filed: December 3, 2018

Before: SILER, GIBBONS, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Stephen M. Kissinger, FEDERAL PUBLIC DEFENDER, Knoxville, Tennessee, for Appellants. Jennifer L. Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

   The court delivered an order. WHITE, J. (pp. 5–9), delivered a separate dissenting opinion.

———————————

**ORDER**

———————————

David Miller, a Tennessee death penalty prisoner, appeals from the district court's judgment denying his motion for a preliminary injunction. For the reasons set forth below, we affirm the district court's judgment.

On November 2, 2018, Miller and other Tennessee capital prisoners sued Tony Parker, Commissioner of the Riverbend Maximum Security Institution, and Tony Mays, Warden of the Riverbend Maximum Security Institution, seeking injunctive relief preventing the defendants from implementing a recently-adopted lethal-injection protocol. On the same date, Miller moved for a preliminary injunction enjoining the defendants from carrying out his execution, currently scheduled for December 6, 2018. The district court subsequently denied the request for a preliminary injunction to the extent that it sought to prevent use of the lethal-injection protocol, *Miller v. Parker*, No. 3:18-CV-01234, 2018 WL 6003123 (M.D. Tenn. Nov. 15, 2018), and the court denied the plaintiffs' motion for reconsideration. *Miller v. Parker*, No. 3:18-CV-01234, 2018 WL 6069181 (M.D. Tenn. Nov. 20, 2018). The plaintiffs appealed this decision, and Miller moved this court for a stay of his execution, which we denied. *Miller v. Parker*, No. 18-6222, 2018 WL 6191350 (6th Cir. Nov. 28, 2018) (order). Miller also requested an expedited briefing schedule, which we granted, and the parties have completed briefing. Further, while this appeal has been pending, Miller elected to be executed by electrocution.

Upon review, we conclude that the district court properly denied Miller's motion for a preliminary injunction. We review the district court's denial of a preliminary injunction for an abuse of discretion. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). In considering whether to issue a preliminary injunction, courts balance four factors: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the injunction will cause substantial harm to others; and (4) whether the public interest is best served by issuing the injunction. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012); *Cooey v. Strickland*, 604 F.3d 939, 943 (6th Cir. 2010). This standard is the same one that we used in reviewing Miller's

motion for a stay.  *See Miller*, 2018 WL 6191350, at *1.  As this court recently noted in another capital case, "[w]hile the obvious harm weighs in [the movant's] favor, it is not dispositive when there is no likelihood of success on the merits of the challenge, and in execution protocol challenges, likelihood of success is often the determinative factor."  *Zagorski v. Haslam*, 741 F. App'x 320, 321 (6th Cir. 2018), *petition for cert. filed* (No. 18-6530) (U.S. Nov. 1, 2018).  We review Miller's likelihood of success on the merits de novo.  *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014).  In order to challenge successfully the State's chosen method of execution, Miller must "establish that the method presents a risk that is *sure or very likely* to cause" serious pain and needless suffering.  *In re Ohio Execution Protocol*, 860 F.3d 881, 886 (6th Cir.) (en banc) (emphasis in original), *cert. denied*, 137 S. Ct. 2238 (2017).

In arguing that the district court erred in denying his motion for a preliminary injunction, Miller essentially raises the same arguments that he presented in his motion seeking a stay of execution.  As with that motion, Miller has not shown a likelihood of success on the merits. Miller first contends that the State's switch of its method of execution from electrocution to the current three-drug protocol violates his rights under the Ex Post Facto Clause.  A change in a State's method of execution will not constitute an ex post facto violation if the evidence shows the new method to be more humane.  *Weaver v. Graham*, 450 U.S. 24, 32 n.17 (1981); *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915).  While Miller argues that Tennessee's change in its method of execution potentially results in greater harm, we rejected this argument in our previous order and concluded that Miller had not shown that the new protocol is "sure or very likely" to be less humane than electrocution.  *See Miller*, 2018 WL 6191350, at *1.

Miller next argues that Tennessee improperly compelled him to choose between two unconstitutional methods of execution, electrocution and the three-drug protocol.  However, we also rejected this argument because this court has concluded that neither of these methods violates the Constitution.  *See id.* at *1-2.  In his brief, Miller relies on evidence and testimony presented in a state Chancery Court proceeding regarding the alleged ineffectiveness of large doses of midazolam as part of the lethal-injection protocol.  However, this court has rejected a challenge to a similar Ohio lethal-injection protocol that, like the current Tennessee protocol, utilizes a large dose of the sedative midazolam as the first drug to render the prisoner

unconscious. *See In re Ohio Execution Protocol Litig.*, 881 F.3d 447, 449-53 (6th Cir.), *cert. denied sub nom.*, *Tibbetts v. Kasich*, 139 S. Ct. 216 (2018); *In re Ohio Execution Protocol*, 860 F.3d at 887-90.

Lastly, because Miller has elected to be executed by electrocution, he has waived any challenge to his execution by that method. *See Zagorski*, 741 F. App'x at 321. Regardless of that waiver, this court repeatedly has upheld the constitutionality of electrocution as a method of execution. *See Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003); *Buell v. Mitchell*, 274 F.3d 337, 370 (6th Cir. 2001).

Accordingly, we **AFFIRM** the district court's judgment.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge, dissenting. I dissent for the same reasons set forth in the order denying Miller's motion for stay of execution, 2018 WL 6193150, at *2-5 (6th Cir. Nov. 28, 2018) (White, J., dissenting). That dissenting statement is set forth below:

Because Miller has shown a substantial likelihood of success on the merits of his claims and it is beyond doubt that the other three injunction factors weigh strongly in his favor, I would grant the stay of execution to allow the district court to conduct an evidentiary hearing on the merits of Miller's claims prior to his execution date, now set for December 6.

This appeal concerns the two alternative methods of execution currently used by the State of Tennessee: (1) lethal injection by a three-drug protocol using midazolam (a benzodiazepine sedative) followed by vecuronium bromide (a paralytic agent) and potassium chloride (a heart-stopping agent); and (2) electrocution. Under Tennessee law, "[f]or any person who commits an offense for which the person is sentenced to the punishment of death, the method for carrying out this sentence shall be by lethal injection." Tenn. Code Ann. § 40-23-114(a). But persons (like Miller) sentenced to death for offenses committed before January 1, 1999, may elect to be executed by electrocution. Tenn. Code Ann. § 40-23-114(b). Electrocution will also be utilized if lethal injection is held unconstitutional or if a drug essential to carrying out execution by lethal injection is unavailable. Tenn. Code Ann. § 40-23-114(e).

Miller's 125-page complaint alleges and provides facts supporting that both electrocution and lethal injection using the three-drug protocol violate the Constitution *and* that the three-drug protocol is the harsher and less humane of the two methods of execution. Because, according to Miller, electrocution is cruel and unusual punishment, and execution using the three-drug protocol would cause even more suffering than electrocution, forcing him to choose between the two methods, as Tennessee has here, leaves him only a choice between two unconstitutional alternatives: be executed by electrocution in violation of the Eighth Amendment, or be executed by lethal injection in violation of the Ex Post Facto clause and the Eighth Amendment.[1] Assuming that electrocution violates the Eighth Amendment, and that lethal injection violates either the Ex Post Facto

---

[1]The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (Emphasis added.) Article I, § 9, clause 3 of the Constitution provides that Congress shall not pass any "ex post facto Law." Another provision, Article I, § 10, directs that "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

clause or the Eighth Amendment, Miller has a strong likelihood of success on his claim that Tennessee violated the Constitution by forcing him to choose between two unconstitutional alternatives. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991) (holding that a confession is coerced when the defendant was presented with a credible threat of legally unjustified violence from a government agent).

Thus, Miller's likelihood of success on his coerced-waiver claim also depends on the likelihood of success on his claims that (1) electrocution is unconstitutional; and (2) lethal injection using the three-drug protocol violates either the Eighth Amendment or the Ex Post Facto clause.

Miller has shown a substantial likelihood of success on his claim that electrocution violates the Constitution as a cruel and unusual punishment. It is true that our earlier cases, as recently as 2004, have held that electrocution is constitutional. *See Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003) (same); *Buell v. Mitchell*, 274 F.3d 337, 370 (6th Cir. 2001) (same). But in each of those cases, we simply cite back to a prior case without any analysis, and the line of summary rejections of challenges to the constitutionality of electrocution ultimately leads back to the Supreme Court's 1890 decision in *In re Kemmler*, 136 U.S. 436, 449 (1890). A lot has changed since the late-nineteenth century, however.[2] In typical cases, the passage of time is not enough to find that a Supreme Court case no longer controls. But the Supreme Court itself has made clear that the Eighth Amendment's prohibition against cruel and unusual punishments demands that we revisit from time to time past judgments of what methods are acceptable to accomplish the ultimate punishment of death. Indeed, the meaning of the Eighth Amendment's prohibition on cruel and unusual punishments is derived from "the evolving standards of decency that mark the progress of a maturing society. This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change." *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008) (internal quotation marks and citations omitted).

Notwithstanding our prior cases summarily rejecting challenges to the constitutionality of electrocution, this court noted in 2007 that "modern sensibilities have moved away from hanging, the firing squad, the gas chamber and electrocution as methods of carrying out a death sentence," and that "[t]he method of execution in 37 of the 38 States that authorize capital sentences has

---

[2]Justice Brennan, joined by Justice Marshall, forcefully made this point in 1985 in his dissent from denial of certiorari in *Glass v. Louisiana*, where he noted the trend of courts summarily rejecting challenges to electrocution "typically on the strength of th[e Supreme] Court's opinion in *In re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890), which . . . was grounded on a number of constitutional premises that have long since been rejected and on factual assumptions that appear not to have withstood the test of experience." 471 U.S. 1080, 1081 (1985).

evolved to make lethal injection the preferred method of carrying out a death sentence with only Nebraska clinging to electrocution." *Workman v. Bredesen*, 486 F.3d 896, 907 (6th Cir. 2007).

The Georgia Supreme Court, *Dawson v. State*, 554 S.E.2d 137 (Ga. 2001), and the Nebraska Supreme Court, *State v. Mata*, 745 N.W.2d 229 (Neb. 2008), have declared electrocution to be cruel and unusual punishment in violation of their analogous state constitutional provisions. The Nebraska Supreme Court noted that the "U.S. Supreme Court has never reviewed objective evidence regarding electrocution's constitutionality," but rather has "based its holdings on state courts' factual assumptions, which, in turn, relied on untested science from 1890." *Id.* at 257. It then examined, in fairly exhaustive detail, evidence that has surfaced since that time, including expert testimony and first-hand observations of past electrocutions. *Id.* It concluded: "[T]he evidence clearly proves that unconsciousness and death are not instantaneous for many condemned prisoners. These prisoners will, when electrocuted, consciously suffer the torture that high voltage electric current inflicts on the human body. The evidence shows that electrocution inflicts intense pain and agonizing suffering. Therefore, electrocution as a method of execution is cruel and unusual punishment . . . ." *Id.* at 279.

Miller's lengthy and detailed complaint presents similar evidence, and, tellingly, the state does not respond to Miller's evidence or arguments on the merits. Thus, Miller has shown a substantial likelihood of success on this claim, and I would remand for a hearing on the merits.

Further, I do not agree that Miller waived his challenge to the constitutionality of electrocution simply because he chose to be electrocuted. He made this election on the eve of the deadline imposed upon him, under circumstances where he believed that the alternative and default method of lethal injection is a far more inhumane and painful way to die. He has consistently challenged the three-drug protocol as unconstitutional. The timing of his election and his consistent challenge to the constitutionality of the three-drug protocol distinguish his circumstances from other cases where we found waiver. *See, e.g.*, *Stanford v. Parker*, 266 F.3d 442, 462 (6th Cir. 2001) (explaining that the plaintiff would waive his challenge to electrocution if he chose electrocution over lethal injection, but noting that the plaintiff did not challenge the constitutionality of lethal injection). Although *Zagorski v. Haslam*, No. 18-6145, 2018 WL 5734458, at *1 (6th Cir. Oct. 31, 2018), found such a waiver, it is an unpublished order and therefore not binding on this court.

Miller has also established a substantial likelihood of success on his claim that the three-drug protocol violates the Ex Post Facto clause by creating a significant risk of pain and suffering beyond that involved in electrocution. "An ex post facto law possesses two elements: (1) 'it must apply to events occurring before its enactment,' and (2) 'it must disadvantage the offender affected by it.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519

U.S. 433, 441 (1997)). As the district court acknowledged, there is authority for finding that changes in execution protocols are subject to ex post facto challenges. R. 20, PID 1699 n.4; *see also Zink v. Lombardi*, No. 2:12-CV-4209-NKL, 2012 WL 12828155, at *4-*5 (W.D. Mo. Nov. 16, 2012) (holding that the plaintiffs alleged a viable ex post facto claim where they alleged that a change to the execution protocol would result in a significant risk of increased pain compared to the prior method of execution); *cf. Weaver v. Graham*, 450 U.S. 24, 32 n.17 (1981) (noting that the "critical question . . . is whether the new provision imposes greater punishment after the commission of the offense," and explaining that the Supreme Court had previously held "that a change in the method of execution was not *ex post facto* because evidence showed the new method to be more humane, not because the change in the execution method was not retrospective" (citing *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915))). Miller has presented plausible and yet-unrebutted assertions that the three-drug protocol causes 18–20 minutes of pain and suffering, substantially longer than the six minutes of pain and suffering caused by electrocution. The state has not addressed the merits of this new evidence, other than to point to recent decisions finding that similar lethal-injection protocols did not inflict cruel and unusual punishment. *See, e.g.*, *In re Ohio Execution Protocol*, 860 F.3d 881, 884 (6th Cir. 2017) (en banc), *cert. denied sub nom. Otte v. Morgan*, 137 S. Ct. 2238 (2017). Those holdings, of course, were based on the evidence presented in those cases, and in any event do not address whether the three-drug protocol constitutes an ex post facto violation. Further, the district court in this case cited another district court's recent finding that there were "serious questions . . . concerning whether the lethal injection protocol with which the state intends to execute the plaintiff is more or less humane than electrocution." R. 4, PID 1699 (citing *Zagorski v. Haslam*, No. 3:18-1035 (M.D. Tenn. Oct. 11, 2018)). The district court did not contest this finding from *Zagorksi* but instead reasoned that it did not matter in this case because the plaintiff in *Zagorski*, unlike in this case, was insisting on electrocution and the state was refusing his request. Nonetheless, based on Miller's unrebutted evidence, the state's failure to respond to that evidence, and the district court's recognition of serious questions concerning whether the three-drug protocol is less humane than execution, Miller has presented a substantial likelihood of success on his ex post facto claim.

Miller's allegations also establish a substantial likelihood of success on his claim that the three-drug protocol constitutes a cruel and unusual punishment, which requires him to show "that the method presents a risk that is *sure or very likely* to cause serious pain and needless suffering" and to identify "a known and available alternative method of execution that entails a lesser risk of pain." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2731, 2737 (2015) (internal quotation marks and citation omitted). Miller contends that evidentiary findings made by a trial court in a case in which Defendants were parties establish that Midazolam (the first drug in the three-drug protocol) will not prevent the pain sure to result from the second and third drugs in the protocol, and that the findings

relied on by the Supreme Court when it upheld the constitutionality of a similar three-drug protocol in *Glossip*, 135 S. Ct. 2726, have been undermined by subsequent developments.  The state did not address the merits of these arguments, either.  Nor did the state dispute that Miller has identified several feasible and readily available alternative methods of execution that would substantially reduce the risk of pain.  Thus, Miller's allegations and supporting documentation establish a likelihood of success on the merits of this claim.

For these reasons, I would grant Miller's motion for stay of execution until the merits of his challenges can be decided, reverse the denial of preliminary injunctive relief, and remand to the district court for further proceedings.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk