Richard Herring was indicted for rape in the first degree and burglary in the first degree, in violation of §§ 13A-6-61
and 13A-7-5, Code of Alabama 1975, respectively. The jury found the appellant "guilty of both counts as charged in the indictment." The trial judge sentenced the appellant to life imprisonment without possibility of parole and ordered him to pay $100 to the Alabama Crime Victims Compensation Fund.
The prosecutrix's husband, T.R.F., was serving a prison term during 1987 and 1988. During that time, he met and befriended the appellant, who was also serving a prison term.
In May of 1987, the appellant was placed on the SIR work release program. He worked during the day at El Chico's Mexican Restaurant in Montgomery, Alabama. At night, he would be picked up by prison personnel and transported back to the prison.
In July of 1988, T.R.F. spoke with his wife by telephone. He told her to go by El Chico's, meet with the appellant and give the appellant some money. The money was to be returned to T.R.F. in prison, where he could use it to buy drinks, snacks, and cigarettes.
The prosecutrix testified that she complied with her husband's request. She went to El Chico's and asked to see the appellant. She was told that he was behind the restaurant waiting on the prison van. She stated that she found him there, introduced herself, and gave him $10 to give to her husband.
She testified that a few days later her husband telephoned her again and told her that he could not "catch up" with the appellant. He instructed her to contact the appellant and retrieve the money. She called the appellant at El Chico's and told him that she wanted to get the money. He left the money with the cashier, and the prosecutrix stopped by and picked it up.
The prosecutrix testified that on August 11, 1988, she had fallen asleep on her couch, when she heard someone banging on her front door. She went to the front door and saw the appellant standing there. She opened the door and spoke with him. He told her that her husband was fine. She told him that she had to go back to sleep, and he left.
She said she returned to the couch and went back to sleep. A short time later, she was startled when she was awakened by someone holding her shoulders down. A knife was placed to her throat, and her assailant threatened to kill her. He told her, in sexually explicit language, what he was going to do to her. With his free hand, he removed her clothing.
He then made her perform oral sex on him. The prosecutrix testified that he appeared to become disgruntled and, consequently, pushed her down on her back. She stated that she was begging him not to hurt her, when he slapped her, told her to be quiet, and ordered her to insert his penis. The prosecutrix testified that, although it was too dark to see his face, she recognized the appellant's voice.
When he finished his act, the assailant stepped away from the couch. At this time, the prosecutrix ran out the front door, screaming as she did, while holding a pillow over the front of her body.
The prosecutrix stated that she ran next door and told her neighbors, Jon and Chris Byncroft, what had happened. Jon ran outdoors and confronted the appellant, who was attempting to get into his car. According to Jon, the appellant threatened to shoot him if he came any closer.
Teresa Pruitt and Dorothy Henderson were staying with their parents on August 11, 1988. They were directly across the street from the prosecutrix's house. The two women were sitting on the front porch, when they noticed a small car drive slowly down the street, then turn around, come back down the street, and park in front of the house next door to the prosecutrix's. The driver got out of his car and walked toward the prosecutrix's house. They could not, however, tell if or when he entered *Page 35 
the house because some trees in front of their house partially blocked their view.
Pruitt and Henderson both testified that they saw the man come back and get into his car about thirty minutes later. At about the same time, they heard a woman scream. The car backed up very fast into a driveway, turned around, and headed down the street away from them.
Detectives S.E. Belcher and Robert Mozingo of the Montgomery Police Department were called to investigate the alleged crime. Upon arriving at the prosecutrix's home, they saw her sitting on her couch. She seemed distraught and upset. They found a knife lying inside the doorway and a pair of men's penny loafer shoes on the floor near the hallway.
Detective Mozingo later took a statement from the appellant. The appellant told Mozingo that he went to the prosecutrix's house and drank some beer and smoked some marijuana with her. According to the appellant, he did have sex with the prosecutrix, but it was with her consent and participation.
James Eaton testified for the appellant. Eaton stated that he was the kitchen manager at El Chico's in August of 1988. He remembered the prosecutrix coming in the back door, which he thought was unusual. Eaton overheard her talking to the appellant. He heard her tell the appellant to bring the wine and they would have a good time.
The appellant also testified. He agreed that he first met the prosecutrix behind El Chico's. This meeting was brief, after which the prosecutrix left.
The appellant claims, however, that two or three days later, while he was sitting under the veranda waiting on the prison van, the prosecutrix drove by. She got out and sat with him for about 20-25 minutes. During this time, they talked about her husband.
Furthermore, the appellant claims that the prosecutrix came by about one week later. He told her that he was getting released soon. She responded that she was going to Eastdale Mall, but that she would return. A couple of hours passed until she returned. The appellant stated that he got her a couple of beers from the bar. She drank them as they sat and talked under the veranda. Then, according to the appellant, they moved their conversation to the prosecutrix's car, where they eventually had sex.
A few days later, on August 6, 1988, the appellant was released from prison. On August 11, 1988, he went by the prosecutrix's house. He knocked on the door, and she let him in. The appellant stated that the prosecutrix asked him if he knew anything about air conditioners, since hers was not working. He asked her if she had checked her fuse box. He then testified that he went out the back door and checked the fuses but found nothing wrong.
According to the appellant, he came back inside and talked with the prosecutrix. He then went to the store, bought some beer and returned. He stated that they sat around, drank two or three beers and smoked marijuana. The two began to kiss and eventually had sex.
Afterwards, she asked the appellant if he would check the plug to the air conditioner. He said he would if she had a screwdriver. She said she did not have a screwdriver but got up, went to the kitchen and returned with a knife. He told her the knife would not work.
The appellant stated that he began to feel guilty about being there with another man's wife, so he got up and dressed. When he started to leave, he claims the prosecutrix ran out the door, covering herself only with a pillow, and started screaming. He stated that he did not realize that he left his shoes behind, because he got worried when he confronted a short, stocky man who told him to leave.
 I
The appellant first contends that the trial judge committed reversible error by refusing to reduce his pre-trial bond.
While this court has not previously addressed the proper time to raise this issue, it is an age-old rule in this state that the *Page 36 
proper mode of challenging a bond set by the trial judge is by writ of habeas corpus or by other proper procedural devices. Such has been the rule since the right to bail was first codified in this state. See Ex parte McCrary, 27 Ala. 65
(1853); Ex parte Croom, 19 Ala. 561 (1851).
Moreover, the Supreme Court has stated that the purpose of bail is not to punish one who has been charged with a crime; rather, "[b]ail is exacted for the sole purpose of securing the attendance of the defendant in court at all times when his presence may be lawfully required. . . ." Beddow v. State,259 Ala. 651, 68 So.2d 503 (1953).
This court has discussed the timeliness of the challenge of a pre-trial bond in dicta but did not resolve the issue. InSprinkle v. State, 368 So.2d 554, 559 (Ala.Cr.App. 1978.), writquashed, 368 So.2d 565 (Ala. 1979), we noted that the appellant failed to challenge his pre-trial bond before trial. We did not, however, explicitly state that his failure to do so constituted a waiver of that issue.
By this decision, we now so state. Since one is presumed innocent, guaranteeing an accused the right to bail in non-capital offenses maintains and protects this inherent presumption. See Sherelis v. State, 452 N.E.2d 411 ( Ind. App. 1983). But once one is adjudicated guilty of the crime for which he is charged, his presumed innocence no longer exists.
Therefore, failure to challenge the adequacy or existence of a pre-trial bond setting before trial constitutes a waiver of that issue. In so holding, we find ourselves in accord with other jurisdictions who have previously addressed this matter. See United States v. Mitchell, 733 F.2d 327 (4th Cir.),cert. denied, 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 409
(1984); People v. Velasquez, 641 P.2d 943 (Colo. 1982), cert.denied, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1983); Statev. Ybarra, 102 Idaho 573, 634 P.2d 435 (1981); State v. Castle,260 Minn. 293, 109 N.W.2d 593 (1961), cert. denied,368 U.S. 978, 82 S.Ct. 481, 7 L.Ed.2d 439 (1962).
 II
During cross-examination of the appellant, the prosecutor asked the appellant several questions regarding inconsistencies in his own testimony and inconsistencies between his testimony and the testimony of other witnesses. The appellant contends that this form of questioning carried negative connotations, which prejudiced him in the eyes of the jury. He thus alleges that the trial judge's allowance of these types of questions constituted reversible error.
The right to cross-examine a witness is a guaranteed right provided to an accused. Ala. Code § 12-21-137 (1975). This right inures to the benefit of the State in a criminal proceeding.Twilley v. State, 472 So.2d 1130, 1137 (Ala.Cr.App.), cert.denied (Ala. 1985); Trawick v. State, 431 So.2d 574, 576-77
(Ala.Cr.App.), cert. denied (Ala. 1983); Bickerstaff v. State,369 So.2d 315, 316-17 (Ala.Cr.App. 1979).
The decision by the trial judge to allow challenged questions lies within his discretion. His rulings will not be overturned absent a showing of an abuse of that discretion.Twilley. Furthermore, the same rule applies where the witness being cross-examined is the defendant. Twilley, quoting 81 Am.Jur.2d, Witnesses, § 495 (1976).
In Twilley, the questions posed by the prosecutor on cross-examination were designed to impeach the defendant. The questions asked by the prosecutor in the present case were aimed at accomplishing the same goal. And, as in Twilley, we find no abuse of the trial judge's discretion in permitting the prosecutor to inquire about inconsistencies in the testimony.
Thus, there is no reversible error as to this issue.
 III
The appellant next contends that his motion for judgment of acquittal as to the burglary charge should have been granted.
The appellant was indicted for burglary in the first degree and rape in the first degree. The trial judge instructed the jury on the elements of both of these offenses, *Page 37 
and the jury returned verdicts of guilty as to both charges. The appellant, however, only challenges the sufficiency of his conviction for burglary, arguing that the State failed to prove an unlawful entry into the prosecutrix's home.
Burglary in the first degree is set out at § 13A-7-5, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument."
The evidence in this case overwhelmingly establishes that the appellant committed this crime. The prosecutrix testified that she was awakened by someone who grabbed her while she was sleeping on her couch. She testified that she did not know how the appellant entered her house, but she believed he entered the back door. She stated that the lock on her back door was not functioning properly.
The prosecutrix's neighbor, Jon Byncroft, testified that the day after the rape he went over to the prosecutrix's house to check the lock. He stated that the male apparatus on the door was not properly aligned with the female apparatus on the door frame. According to Jon, the lock could have ben set and the door closed, but the locking mechanism still would not have worked properly.
Furthermore, the prosecutrix testified that the appellant placed a knife to her throat and threatened to kill her. He got the knife from the prosecutrix's kitchen. Cf. Pardue v.State, [Ms. 3 Div. 997, Sept. 29, 1989] (Ala.Cr.App. 1989);Buchannon v. State, 554 So.2d 477 (Ala.Cr.App. 1989) (weapon taken from home as mere "loot" and not used in a threatening manner). This testimony satisfies the element that the appellant threatened the uses of a dangerous instrument. Ala. Code § 13A-7-5(a)(3) (1975). She also stated that the appellant struck her once in the face. The State offered into evidence a photograph of the prosecutrix, taken on the day after the rape, which showed swelling to the left side of her face. This evidence satisfies the requirement of physical injury in the burglary statute. Ala. Code § 13A-7-5(a)(2);Johnson v. State, 552 So.2d 883 (Ala.Cr.App. 1989) (impairment of physical condition or substantial pain in § 13A-1-2(8), Code of Alabama 1975).
Additionally, the evidence indicates that the appellant unlawfully entered the prosecutrix's home with the intent to rape her therein. The State's proof that the appellant was armed, caused physical injury to the prosecutrix, and threatened her with the knife was ample proof required to sustain the appellant's conviction.
 IV
The appellant lastly contends that the sentencing enhancement provisions of the Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, are arbitrary and capricious, violate his right to equal protection of law, and constitute cruel and unusual punishment.
We have previously addressed all of these contentions and found this statute to be constitutional in all respects. The grounds raised by the appellant fail to convince us that a different result should be reached. See Smith v. State,529 So.2d 1022 (Ala.Cr.App. 1987) (life without possibility of parole not unduly harsh); Johnson v. State, 515 So.2d 132
(Ala.Cr.App. 1987); Thompson v. State, 462 So.2d 777
(Ala.Cr.App. 1984); Rocker v. State, 443 So.2d 1316
(Ala.Cr.App. 1983); Jemison v. State, 439 So.2d 786
(Ala.Cr.App. 1983). See generally, annotations at part II following § 13A-5-9, Code of Alabama 1975 (Supp. 1989). *Page 38 
For the reasons stated, the decision of the trial judge is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.