Rel: December 20, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

————————————————

## CR-2023-0793

————————————————

## Ex parte Billy Joe Carter, Jr.

## PETITION FOR A WRIT OF HABEAS CORPUS

## (In re: State of Alabama

## v.

## Billy Joe Carter, Jr.)

## (Shelby Circuit Court, DC-23-901353)

COLE, Judge.

On May 11, 2023, Billy Joe Carter, Jr., was arrested for first-degree rape. The warrant for his arrest alleged that, on May 22, 2021, he had sexual intercourse with "a member of the opposite sex, who was incapable

of consent by reason of being physically helpless or mentally incapacitated." (Carter's petition, Ex. A.) The day after his arrest, Carter appeared in the Shelby District Court where a magistrate set his bond at $150,000. (Carter's petition, Ex. B.) Carter raised no objections to the magistrate's having set his bond.

Over three months later, on August 25, 2023, the State moved the Shelby Circuit Court[1] to conduct a "pretrial detention hearing" under § 15-13-3, Ala. Code 1975, which codified the amendment to Ala. Const. 2022, Art. I, § 16, known as "Aniah's Law."[2] (Carter's petition, Ex. D.) On August 28, 2023, the circuit court scheduled Carter's case for an Aniah's Law hearing and ordered that Carter "shall be held without bail pending a pretrial detention hearing as required by Section 15-13-3(b)(2), Code of Alabama." (Carter's petition, Ex. E.) On September 8, 2023, before his Aniah's Law hearing, Carter moved the circuit court for a "bond

---

[1]On July 15, 2022, Presiding Circuit Judge William H. Bostick III appointed District Judge William Casey Duncan as a specially assigned Circuit Judge for the 18th Judicial Circuit. (Carter's petition, Ex. O.)

[2]In 2022, the citizens of Alabama voted to amend Ala. Const. 2022, Art. I, § 16, adding several crimes, including first-degree rape, to the list of offenses that are not bailable as a matter of right. The Aniah's Law amendment was ratified on November 28, 2022, and became effective on January 1, 2023.

reduction," arguing that, because a magistrate -- not a judge -- had presided over his 72-hour initial-appearance hearing, under Rule 4.3(b), Ala. R. Crim. P., his "bail [should] be changed to a personal recognizance bond or in the alternative the minimum amount required by the bail schedule set forth in Rule 7.2(b)[, Ala. R. Crim. P.]"  (Carter's petition, Ex. G.)  On September 11, 2023, Carter again objected to the State's motion for an Aniah's Law hearing, arguing that he had been "held on an illegally high bond since May 11, 2023," and that "his bond must be set at the minimum level under the schedule, or he must be given a recognizance or signature bond," because he was "not seen by a judge [but by a magistrate] at the seventy-two hour hearing."  (Carter's petition, Ex. I.)

On September 13, 2023, the circuit court held Carter's Aniah's Law hearing.  At that hearing, Carter again argued that, because "his 72-hour [bond] proceedings were governed by a magistrate rather than a judge, … he's entitled to the minimum bond in this case … that would be ten thousand dollars."  (Carter's petition, Ex. J., R. 38-39.)  Carter further

argued that applying Aniah's Law[3] to his first-degree-rape charge "is unconstitutional because <u>at the time of his offense</u> [Carter] had a constitutional right to bail under the Alabama Constitution in Article 1 Section 16, and … this hearing today would take away that right ex post facto."  (Carter's petition, Ex. J., R. 6.)

After the hearing, the circuit court issued an order denying Carter's motion for a bond reduction, but it acknowledged that Carter's "initial appearance was conducted before a magistrate, rather than before a judge, as required by the February 1, 2021, amendment to Rule 4.3, Alabama Rules of Criminal Procedure, which formerly allowed such appearance to be conducted before either a magistrate or a judge." (Carter's petition, Ex. K.)  In finding that Carter was not entitled to the minimum bond amount based on the remedy provided in Rule 4.3 for a failure to comport with the rule's requirements, the circuit court relied on the <u>exception</u>, which states that the remedy is not applicable if "the charge upon which the person was arrested is not a bailable offense." (Carter's petition, Ex. K (quoting Rule 4.3(b)(3), Ala. R. Crim. P.)  The

---

[3]This Court's references to Aniah's Law include both the constitutional provision and the related statutory provisions.

circuit court thus concluded that, because Aniah's Law made Carter's offense one that "is no longer bailable as a matter of right," the remedy provided in Rule 4.3(b)(3), that a person who has not been taken before a judge within 72 hours of his or her arrest "shall be released upon execution of an appearance bond in the minimum amount," did not apply. (Carter's petition, Ex. K.) The circuit court also issued an order overruling Carter's ex post facto objection to the hearing and the application of Aniah's Law. (Carter's petition, Ex. L.) Finally, based on the evidence presented at the hearing, the circuit court issued an order resetting Carter's bail at $100,000.[4] (Carter's petition, Ex. M.)

Carter now petitions this Court for a writ of habeas corpus. In his petition, Carter asks this Court to order the circuit court to set aside its order denying his motion for a bond reduction to the minimum amount and, instead, to set his bond at the minimum amount of $10,000. Carter raises two arguments as to why this Court should issue the writ. First, Carter argues that, because his "seventy-two hour hearing was conducted

---

[4]Carter's bond was originally set at $150,000 by the magistrate, but the circuit court reduced the bond to $100,000 after hearing the evidence and the State's grounds for increasing the bond. (Carter's petition, Ex. N.)

5

by a magistrate and not a judge in violation of [Rule 4.3(b)(3),] Ala. R. Crim. P.," the circuit court was required to grant him the "minimum bond under the schedule." (Carter's petition, pp. 7, 12.) Second, Carter argues that, because "Aniah's Law was not in effect as of the date of [his] alleged offense," its application to exclude him from the minimum-bail remedy provided by Rule 4.3(b)(3), Ala. R. Crim. P., violates the Ex Post Facto Clauses of the Alabama Constitution -- Art. I, § 7 -- and the United States Constitution -- Art. I, § 9. (Carter's petition, p. 13.) For the following reasons, we deny Carter's petition.

## I.   Rule 4.3, Ala. R. Crim. P.

Carter contends that Rule 4.3, Ala. R. Crim. P., was violated when his 72-hour initial-appearance hearing was conducted by a "magistrate" instead of a "judge." Carter then argues that, under Rule 4.3, "the remedy for a failure to take a defendant before a judge at the seventy-two hour hearing is for the defendant to receive either the minimum bond listed in the bond schedule or to be granted a recognizance bond." (Carter's petition, p. 11.)

Rule 4.3(b)(3), Ala. R. Crim. P. provides:

"If the person arrested cannot meet the conditions of release and has not been taken before a judge in the case of a warrant

6

issued on a complaint, or has not been taken before the circuit judge in the case of a warrant issued on an indictment, without undue delay, except in either case in no event later than seventy-two (72) hours after arrest, <u>unless the charge upon which the person was arrested is not a bailable offense,</u> such person shall be released upon execution of an appearance bond in the minimum amount required by the schedule set forth in Rule 7.2(b), [Ala. R. Crim. P.,] or on his or her personal recognizance pursuant to Rule 7.2(a), [Ala. R. Crim. P.,] or on a signature bond, and directed to appear for arraignment either at a specified time and place or at such time and place as he or she shall be subsequently notified of."

(Emphasis added.)

Carter contends that the remedy provided by Rule 4.3(b)(3) applies when the hearing is conducted by a "magistrate" instead of a "judge," just as this Court has held that the remedy established in Rule 4.3(b)(3) applies when more than 72 hours has passed before an initial-appearance hearing. <u>See</u> <u>Ex parte Hutto</u>, 720 So. 2d 1051, 1051 (Ala. Crim. App. 1998) (granting Hutto's petition to direct the circuit court "to set his bail at the minimum amount recommended in Rule 7.2, Ala. R. Crim. P.," because Hutto's initial-appearance hearing was held 12 days after his arrest instead of within the required 72 hours). Assuming without deciding that a hearing conducted by a magistrate instead of a judge[5] also

_____

[5]Rule 4.3(b)(3) was amended in February 2021, and "magistrate" was deleted from the text of the rule, which had previously provided that

7

triggers the remedy provided in Rule 4.3(b)(3), the rule contains an exception that prevents application of the remedy for a violation of the rule if "the charge upon which the person was arrested is not a bailable offense." Rule 4.3(b)(3). Thus, if Carter's offense was not a "bailable offense," the circuit court's failure to comply with the Rule 4.3(b)(3) requirement that the 72-hour initial-appearance hearing be conducted by a "judge" will not result in application of the remedy that Carter seeks. Here, the circuit court rejected Carter's argument that he was entitled to the remedy, finding it inapplicable because, at the time of Carter's 72-hour initial-appearance hearing, first-degree rape was no longer a "bailable [offense] as a matter of right." (Carter's petition, Ex. K.) In short, because Carter was arrested for first-degree rape, which was no longer a "bailable" offense at the time of his initial-appearance hearing, any failure to comply with Rule 4.3 requirements (here, that his hearing be conducted by a judge and not a magistrate) did not require Carter's release on his personal recognizance, or on a signature bond, or on the

the 72-hour initial-appearance hearing could be conducted by either a "magistrate" or a "judge." This change remains after the most recent amendments to the rule, which became effective on March 28, 2024.

8

minimum bond amount provided in the schedule set forth in Rule 7.2(b), Ala. R. Crim. P.  We agree with the circuit court's conclusion.

Carter's initial-appearance hearing was held on May 12, 2023, the day after his arrest for first-degree rape.  (Carter's petition, Ex. A. and Ex. B.)  At the time of Carter's hearing, first-degree rape was no longer a "bailable offense" in Alabama.  Under the Aniah's Law amendment to the Alabama Constitution that became effective over four months earlier, on January 1, 2023, "all persons shall, before conviction be <u>bailable</u> by sufficient sureties, <u>unless</u> charged with … rape in the first degree," among other offenses that are also no longer "bailable."  Ala. Const. 2022, Art. I, § 16 (emphasis added).  In addition, § 15-13-3(b)(1)(c), Ala. Code 1975, became effective over five months before Carter's initial-appearance hearing and provides that:

> "after the presentment of an indictment or a showing of probable cause in the charged offense, and if the prosecuting attorney proves by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person, [a court] may <u>deny a defendant's bail</u>, if he or she is charged with … [r]ape in the first degree."

(Emphasis added.)  Likewise, an amendment to Rule 7.2, Ala. R. Crim. P., which became effective nearly two months before Carter's initial-

9

appearance hearing, recognized that, "[i]n accordance with § 15-13-3(b), Ala. Code 1975, a defendant charged with an offense listed in § 15-13-3(b)(1) [including rape in the first degree] may be <u>denied bail</u>." (Emphasis added.) Rule 7.2(b), Ala. R. Crim. P., further provided at the time of Carter's hearing, as it does now, that the bail for the offenses listed in § 15-13-3(b)(1), including first-degree rape, was between $10,000 to "No Bail Allowed," further illustrating that first-degree rape, like capital murder, which has a recommended range of bail of $50,000 to "No Bail Allowed," is not "bailable" in Alabama. Clearly, according to the laws in place at the time of Carter's initial-appearance hearing, first-degree rape, the offense with which he was charged, was no longer "bailable" as a matter of right.

Carter contends, however, that the exception to the remedy in Rule 4.3(b)(3), Ala. R. Crim. P., for failing to comply with the hearing requirements does not apply to him because, he says, his offense is "bailable" because he was, in fact, granted bail. In other words, he asserts that, although first-degree rape is not "bailable" <u>as a matter of right</u> but could <u>potentially</u> be eligible for bail, and because he was awarded bail, his offense <u>is</u> a "bailable" offense. Thus, according to Carter, to not be

"bailable" in Alabama means something different than to not be "bailable" "as a matter of right." (Carter's petition, p. 13.) Therefore, he asserts, if first-degree rape is or could ever be "bailable," contrary to Art. I, § 16, Ala. Const., 2022, the remedy in Rule 4.3(b)(3) of being granted the minimum bail amount applies to him. We reject Carter's interpretation, which is refuted by the plain language of the Constitution, the well-established use of the term "bailable" in Alabama, and principles of logic and common sense.

According to the plain language of Art. I, § 16, Ala. Const., 2022, first-degree rape is <u>not</u> a "bailable" offense. Without any qualifying limitation, Article I, § 16, clearly and unequivocally provides, as it did at the time of Carter's initial-appearance hearing, that all persons are "bailable" "<u>unless</u> charged with … rape in the first degree," in addition to other crimes, including capital murder. Thus, any offense in Alabama that is not "bailable" "as a matter of right" is not "bailable." The Alabama Constitution makes no distinction between "not bailable ever" and "not bailable as a matter of right," as Carter advocates. Rather, according to the Alabama Constitution, a person is simply <u>not</u> "bailable" if charged with first-degree rape.

11

Carter, however, relies on the strictest definition of "bailable" as "eligible for bail" and contends that "[t]o define the word bailable in a manner that excludes offenses that have legally set numeric bails" is not a reasonable interpretation of the plain language of Rule 4.3(b)." (Carter's petition, p. 16.) Indeed, Carter's suggested interpretation, that to not be "bailable" means to never be bailable as opposed to not bailable "as a matter of right," would render the word "bailable" as used in the Alabama Constitution, statutes, and rules utterly meaningless. For example, Carter contends that his charged offense of first-degree rape must be "bailable" because the offense has a "legally set numeric bail" and because, in fact, his bail was set. (Carter's petition, p. 16.) However, even capital offenses have a recommended range of bail that includes a "legally set numeric bail," but a defendant charged with a capital offense "is not <u>eligible for bail</u>" <u>unless</u> "the court is of the opinion, on the evidence adduced, that he or she is guilty of the offense." § 15-13-3, Ala. Code 1975 (emphasis added). If the term "bailable" is interpreted as strictly as Carter advocates, meaning an offense <u>never</u> eligible for bail, there would be no need to exclude offenses that are not "bailable" from the remedy in Rule 4.3(b)(3), because Alabama would have <u>no</u> offenses that are <u>never</u>

12

bailable, and the term "bailable" would be utterly deprived of any practical meaning. In other words, to agree with Carter's definition of "bailable," every offense in Alabama would be bailable, contrary to the Alabama Constitution, statutes, and rules. On this basis alone, Carter's argument that the remedy in Rule 4.3(b)(3) should apply to him because, he argues, first-degree rape is "bailable," just not "as a matter of right," fails. In short, it is clear to this Court that the term "bailable" necessarily means "bailable as a matter of right."

Carter attempts to bolster his argument by focusing on the language found in § 15-13-3, Ala. Code 1975, that a court <u>may</u> deny bail for a person charged with first-degree rape "<u>if</u> the prosecuting attorney proves by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person." Initially, we note that Carter fails to recognize that, although § 15-13-3 limits the circumstances under which an offense is not bailable, the Alabama Constitution adds no qualification to the offenses that it says are not "bailable." Section 15-13-108, Ala. Code 1975, also makes it abundantly clear that all offenses are "bailable" <u>unless</u> they are not

"bailable," "as a matter of right." <u>See</u> § 15-13-108 (explaining that, "[i]n all cases of misdemeanors and felonies, <u>unless otherwise specified</u>, the defendant is, before conviction, entitled to bail <u>as a matter of right</u>" (emphasis added)). Moreover, Aniah's Law both added first-degree rape, Carter's charged offense, to the offenses that are not "bailable" and <u>removed</u> any qualifier that would limit <u>under what circumstances</u> an offense would not be "bailable." Accordingly, Aniah's Law, both by its addition and subtraction, makes clear that offenses are bailable in Alabama unless they are not "bailable" "as a matter of right."

Our understanding of "bailable," meaning bailable as a matter of right, is made even more clear by the change from the previous version of Article I, § 16, of the Alabama Constitution, which provided "[t]hat all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, <u>when the proof is evident or the presumption great</u>." (Emphasis added.) By removing the previous qualification, setting forth conditions that must be met for an offense to not be "bailable," the Alabama Constitution removed any doubt that to not be "bailable" in Alabama means to not be bailable "as a matter of right." In short, the

Alabama Constitution states that a person charged with "rape in the first degree" is not "bailable."

To interpret the Alabama Constitution as Carter desires would also be a "reckless approach to constitutional interpretation" and subvert the will of the people. See, e.g., Flynn v. State, [Ms. CR-21-0199, Feb. 9, 2024] ___ So. 3d ___, ___ (Ala. Crim. App. 2024). It is not for this Court to "'read into' the Alabama Constitution" but, rather, to seek "to determine what it does say as ratified by the people." Id. at ___. Moreover, "when interpreting a provision of the Alabama Constitution, our duty is to seek to discover the original public meaning of the provision, i.e., '"the meaning the people understood [the] provision to have at the time they enacted it."'" Id. at ___ (quoting Barnett v. Jones, 338 So. 3d 757, 767 (Ala. 2021) (Mitchell, J., concurring specially), quoting in turn Olevik v. State, 302 Ga. 228, 235, 806 S.E. 2d 505, 513 (2017)). In this case, the "public meaning" can be discerned from both the recent passage of the constitutional amendment and the events that led to its passage. We provided the following summary of those events in Ex parte Green, 391 So. 3d 396 (Ala. Crim. App. 2023):

> "Article I, § 16, Alabama Constitution of 1901, had long granted an absolute right to bail in all noncapital cases. See

15

State v. Blake, 642 So. 2d 959, 968 (Ala. 1994). However, the kidnapping and murder of Aniah Blanchard, allegedly perpetrated by a man who was free on bail for various violent offenses, caused a groundswell of support to remove that right for certain charges.[1] Act No. 2021-267, Ala. Act. 2021, which was enacted by the Alabama Legislature on April 22, 2021, and signed into law by Governor Kay Ivey on June 24, 2021, created 'Aniah's Law' and provided additional offenses for which bail could be denied.

"_____

"[1]Blanchard, a 19-year-old college student, was reported missing in October 2019; her remains were discovered the following month. The man accused of her kidnapping and murder was, at the time of Blanchard's disappearance, free on bail for, among other charges, robbery, attempted murder, and kidnapping."

Id. at 398. The Aniah's Law amendment was "overwhelmingly approved [by Alabama voters] on November 8, 2022." Id. The people spoke that first-degree rape, along with other offenses, was no longer "bailable."

Moreover, to the extent that there is any conflict, the Constitution controls the meaning of "bailable" as it is used in Rule 4.3(b)(3). It is well settled that the Alabama Constitution is the "supreme law" of Alabama.

"The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority. Subject only to the restraints resulting from the Constitution of the United States, the Constitution of Alabama is the highest form and expression of law that exists in this state. The source of its creation and the character of its sanction, viz. the people's deliberate will,

16

invest the Constitution with its paramount quality. The Constitution's control is absolute wherever and to whatever its provisions apply; and every officer, executive, legislative, and judicial, is bound by oath (section 279) to support the Constitution, to vindicate and uphold its mandates, and to observe and enforce its inhibitions without regard to extrinsic circumstances. It commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions; the instrument itself prescribes the exclusive modes by which it may be altered or amended, or its effect and operation changed. Otherwise than as these exclusive modes contemplate and authorize the Constitution's alteration, its character is permanent, its force and influence enduring. Both of these exclusive modes are plainly stated in sections 284-287 of the Constitution."

Johnson v. Craft, 205 Ala. 386, 393, 87 So. 375, 380 (1921).

Accordingly, although § 15-13-3 explains when an offense is "not bailable as a matter of right," the Constitution, not the statute, controls whether first-degree rape is "bailable" as that term is used in other Alabama statutes and rules. And, as already stated, the express language of Art. I, § 16 refutes Carter's argument that the word "bailable" in Rule 4.3(b)(3) means something different than the word "bailable" in the Alabama Constitution. Moreover, the bail statutes also support our conclusion that, in Alabama, there are two types of offenses -- those that are "bailable" "as a matter of right" and those that are not "bailable" "as a matter of right." See § 15-13-108, Ala. Code 1975 (stating that "unless

17

otherwise specified," a defendant, before conviction, is "entitled to bail as a matter of right"), and § 15-13-3, Ala. Code 1975 (specifying for what offenses bail may be denied).

In sum, we agree with the circuit court and hold that, at the time of Carter's 72-hour initial-appearance hearing, his charged offense of first-degree rape was no longer "bailable," which, for all the above-stated reasons, means not "bailable" "as a matter of right" under the Alabama Constitution. Thus, the remedy of Rule 4.3(b)(3) did not apply to any errors in Carter's initial-appearance hearing.

## II. Ex Post Facto Clauses

Carter also argues that, even if first-degree rape is no longer a "bailable" offense in Alabama, the application of Art. I, § 16, Ala. Const. 2022, to his bond determination violates the Ex Post Facto Clauses of the Alabama Constitution and the United States Constitution because, he says, "Aniah's Law was not in effect as of the date of [his] alleged offense." (Carter's petition, p. 13.) More specifically, Carter challenges the application of Aniah's Law to preclude the remedy for his initial-appearance hearing's alleged failure to comport with Rule 4.3 when the

act forming the basis of the charged offense occurred before the effective date of the law. This argument is also without merit.

Certainly,

> "'[a]s a general rule, a criminal offender must be <u>sentenced</u> pursuant to the statute in effect at the time of the commission of the offense, at least in the absence of an expression of intent by the legislature to make the new statute applicable to previously committed crimes. An increase in the <u>penalty</u> for previously committed crimes violates the prohibition against ex post facto legislation.'"

<u>Zimmerman v. State</u>, 838 So. 2d 404, 405 (Ala. Crim. App. 2001) (quoting 24 C.J.S. <u>Criminal Law</u> § 1462 (1989)) (emphasis added; footnotes omitted). Carter, however, mistakenly conflates bail with punishment and substantive rights with procedural rights. Because bail is not a <u>punishment</u> and because the right to bail is only a <u>procedural</u> right, not a substantive right, the Ex Post Facto Clauses are not violated by the retroactive application of the Aniah's Law amendment, which establishes which offenses are not "bailable" "as a matter of right."

After Carter had allegedly committed a first-degree rape, but before he was arrested for that offense, the citizens of Alabama voted to amend Art. I, § 16, Ala. Const. 2022, adding first-degree rape, <u>see</u> § 13A-6-61, Ala. Code 1975, to the list of offenses for which there is no automatic right

to bail. That constitutional amendment, known as "Aniah's Law," was ratified on November 28, 2022, and became effective on January 1, 2023.

There appears to be no dispute that Aniah's Law was applied to determine the appropriate bond for Carter and that his alleged criminal conduct occurred before the effective date of that law. Thus, Aniah's Law has been applied retroactively to set his bond amount and has been used to preclude him from the remedy in Rule 4.3(b)(3) based on the alleged failure to comport with that rule because Carter's initial-appearance hearing was conducted by a magistrate. However, as the United States Court of Appeals for the Sixth Circuit has explained:

> "Retrospective application alone, however, is not enough to make out an ex post facto violation. The Ex Post Facto Clause does not guarantee that a criminal defendant's case will be governed in all respects by the law in force when the crime was committed. Dobbert v. Florida, 432 U.S. 282, 293, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977). '[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, see Malloy v. South Carolina, 237 U.S. 180, 183, 35 S. Ct. 507, 59 L. Ed. 905 (1915), and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' Dobbert, 432 U.S. at 293, 97 S. Ct. 2290 (quoting Beazell v. Ohio, 269 U.S. 167, 171, 46 S. Ct. 68, 70 L. Ed. 216 (1925)). Thus, no ex post facto violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.' Miller v. Florida, 482 U.S. 423, 430, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987) (quoting Dobbert, 432 U.S. at 293, 97 S. Ct. 2290).

20

'Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto.' Dobbert, 432 U.S. at 293, 97 S. Ct. 2290. See also Landgraf v. USI Film Prods., 511 U.S. 244, 275 n. 28, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) ('While we have strictly construed the Ex Post Facto Clause to prohibit application of new statutes creating or increasing punishments after the fact, we have upheld intervening procedural changes even if application of the new rule operated to a defendant's disadvantage in the particular case.'). On the other hand, a change in the law that alters a substantial right can be ex post facto 'even if the statute takes a seemingly procedural form.' Weaver [v. Graham], 450 U.S. [24,] 29 n. 12, 101 S. Ct. 960 [(1981)] (citing Thompson v. Utah, 170 U.S. 343, 354-55, 18 S. Ct. 620, 42 L. Ed. 1061 (1898); Kring v. Missouri, 107 U.S. 221, 232, 2 S. Ct. 443, 27 L. Ed. 506 (1883)).

"The Supreme Court has recognized that the distinction between substance and procedure might sometimes prove elusive. Miller, 482 U.S. at 433, 107 S. Ct. 2446. The general rule that has emerged from the case law, however, is that a change is procedural, and does not affect a substantial right if the change does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.' Weaver, 450 U.S. at 31 n. 12, 101 S. Ct. 960 (quoting Hopt v. Utah, 110 U.S. 574, 590, 4 S. Ct. 202, 28 L. Ed. 262 (1884)). Thus, in Weaver the Court found that Florida's revised good-time provision violated the Ex Post Facto Clause because it constricted an inmate's opportunity to earn early release, and thereby made 'more onerous the punishment for crimes committed before its enactment.' 450 U.S. at 35-36, 101 S. Ct. 960. In Miller the Court held that because a change in the sentencing guidelines after the offense was committed increased the number of primary offense points assigned to sexual offenses by 20%, the change could not be deemed procedural because it 'directly and adversely' affected the sentence the petitioner would receive. Miller, 482 U.S. at 433-35, 107 S. Ct. 2446. In Dobbert, on the

21

other hand, the Court rejected the petitioner's argument that changes in the Florida death penalty statute posed an ex post facto violation: '[T]he change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; <u>there was no change in the quantum of punishment attached to the crime</u>.' <u>Id.</u> at 293-94, 97 S. Ct. 2290. The <u>Dobbert</u> Court compared the case before it to <u>Hopt v. Utah</u>, 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884), in which the Court considered a change in the rules of evidence between the date of the offense and the date of the trial: '<u>Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict</u>.' <u>Dobbert</u>, 432 U.S. at 293, 97 S. Ct. 2290 (citing <u>Hopt</u>, 110 U.S. at 589, 4 S. Ct. 202)."

<u>United States v. Ristovski</u>, 312 F.3d 206, 210-211 (6th Cir. 2002) (emphasis added).

Recently, this Court explained the application of the Ex Post Facto Clause as follows:

"'A law or rule relating merely to matters of <u>procedure</u>, and not depriving the accused of any <u>substantial</u> right, is not ex post facto.' <u>Bighames v. State</u>, 462 So. 2d 796, 797 (Ala. Crim. App. 1984). Discussing a procedural change versus a substantive change, this Court has stated:

"'The laws regarding <u>substantive</u> and jurisdictional matters in effect at the time of the crime are applied because changes in those laws occurring after the offense may constitute ex post facto laws. <u>See</u> <u>generally</u> <u>Collins v. Youngblood</u>,

22

497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990); Beazell v. Ohio, 269 U.S. 167, 46 S. Ct. 68, 70 L. Ed. 216 (1925). In contrast, "[p]rocedural rules generally regulate trial proceedings, and these rules are not generally targeted as proscribing unwanted conduct [or otherwise falling within the definition of an ex post facto law]. Therefore, it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding." Mozee v. American Commercial Marine Service Co., 963 F.2d 929, 939 (7th Cir. 1992), quoted in Brown v. Amoco Oil Co., 793 F. Supp. 846, 851 (N.D. Ind. 1992).

"'"[T]he word 'procedural' ... refers to ... the procedures by which a criminal case is adjudicated, as opposed to ... the substantive law of crime." Collins v. Youngblood, 497 U.S. at 45, 110 S. Ct. at 2720.'

"Prince v. State, 623 So. 2d 355, 362 (Ala. Crim. App. 1992)."

Williams v. State, 389 So. 3d 385, 393-94 (Ala. Crim. App. 2023) (plurality opinion) (emphasis added).

In Williams, this Court further explained that

"'[t]he purpose of an ex post facto clause is to prevent lawmakers from passing "arbitrary or vindictive legislation." Miller v. Florida, 482 U.S. 423, 429, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987) (citations omitted). An ex post facto clause also ensures that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). For a law to present an ex post facto violation, the law must (1) be retrospective and

23

apply to events taking place prior to its enactment and (2) work to disadvantage the offender.  State v. Huiett, 302 S.C. 169, 171, 394 S.E. 2d 486, 487 (1990).

"'The seminal case of Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798), sets forth four general categories of law that are violative of the ex post facto clause of the United States Constitution.

> "'"1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd.  Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.   4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

"'Id. at 390.

"'A change in the law does not run afoul of the ex post facto clause if it only affects a mode of procedure and does not alter "substantial personal rights."  Huiett, 302 S.C. at 171, 394 S.E.2d at 487 (quoting Miller, 482 U.S. at 430, 107 S. Ct. 2446).  Furthermore, in order for the ex post facto clause to be implicated, the statute at issue must be criminal or penal in purpose and nature.  Id. at 172, 394 S.E.2d at 487.  "Even though a procedural change may have a detrimental impact on a defendant, a mere procedural change which does not affect substantial rights is not ex post facto."  Id. at 171-72, 394 S.E. 2d at 487.'"

24

385 So. 3d at 394 (quoting State v. Bryant, 382 S.C. 505, 510-12, 675 S.E.2d 816, 819-20 (2009)) (emphasis added).

It is well settled in Alabama "that the purpose of bail is not to punish one who has been charged with a crime; rather, '[b]ail is exacted for the sole purpose of securing the attendance of the defendant in court at all times when his presence may be lawfully required. …'" Herring v. State, 563 So. 2d 33, 36 (Ala. Crim. App. 1990) (quoting Beddow v. State, 259 Ala. 651, 652, 68 So. 2d 503, 503 (1953)) (emphasis added). See also § 15-13-102, Ala. Code 1975 ("The primary purpose of bail is to procure the release of a person charged with an offense upon obtaining assurance, with or without security, of the defendant's future appearance in court.").

Thus, although applying Aniah's Law to conduct that occurred before the effective date of that law certainly could work to Carter's disadvantage by resulting in his not receiving a bond for first-degree rape or, as resulted here, Carter's not being entitled to the Rule 4.3(b)(3) remedy if that rule is not complied with, the retroactive application of Aniah's Law does not criminalize conduct that had not been criminalized before or increase the punishment Carter may receive for his alleged offense. Likewise, Aniah's Law neither changes the elements of first-

25

degree rape (or, for that matter, any other offense that falls under the law), nor alters evidentiary rules to establish Carter's guilt for the charged offense.

Not only does the ex post facto application of Aniah's Law not satisfy the test set forth in Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798), it also does not affect a "substantial right." Aniah's Law merely sets out the procedure a court must follow to determine whether bail is appropriate for certain enumerated offenses. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required." (Emphasis added.) However, the United States Supreme Court has never indicated that the Eighth Amendment bestows "a right to bail in all cases." Carlson v. Landon, 342 U.S. 524, 545 (1952). "Indeed, the very language of the Amendment fails to say all arrests must be bailable." Id. at 545-46. Likewise, Art. I, § 16, Ala. Const. 2022, makes clear "[t]hat all persons shall, before conviction, be bailable by sufficient sureties unless charged with" certain offenses, including "rape in the first degree." (Emphasis added.) As already stated, the purpose of bail is not to convict or to punish but to ensure an accused's appearance in court.

The laws establishing bail are merely a means of regulating trial proceedings.

The United States Supreme Court recognized the purpose of bail and its procedural, regulatory nature when considering the federal Bail Reform Act of 1984, which, similarly to Aniah's Law, "allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure … the safety of any other person and the community." United States v. Salerno, 481 U.S. 739, 741 (1987). The Salerno Court concluded "that the pretrial determination contemplated by the Bail Reform Act is regulatory in nature and does not constitute punishment before trial." Id. at 748 (emphasis added). Moreover, the Court stated that "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." Id. at 747 (emphasis added). Although the Court did not address the Ex Post Facto Clause in Salerno, it held that the Bail Reform Act did not offend the Due Process or Excessive Bail Clauses. Id. at 755.

In short, the right to bail is not a substantive right but, rather, is merely procedural in nature. Thus, we hold that Aniah's Law, which

27

made Carter's charged offense of first-degree rape no longer a "bailable" offense, does not violate the Ex Post Facto Clauses of the Alabama Constitution or the United States Constitution.[6]

Carter's attempts to liken his case to Ex parte Ziglar, 604 So. 2d 384 (Ala. 1992), are unavailing. Ziglar challenged the retroactive application of Rule 1.5, Ala. R. Crim. P., which resulted in his bail being revoked. Specifically, while Ziglar was free on an appeal bond, the Alabama Supreme Court changed Rule 1.5 to make "the new Alabama Rules of Criminal Procedure applicable in all criminal proceedings,

___

[6]We further note that federal courts, including the Eleventh Circuit Court of Appeals, have previously expressly held that laws governing bail are procedural and that retroactive application of changes in bail laws do not violate the Ex Post Facto Clause. See, e.g., United States v. Ballone, 762 F.2d 1381, 1383 (11th Cir. 1985) (recognizing that "[t]he change in standards governing availability of bail pending appeal [under the Bail Reform Act of 1984] is procedural, and not an increase in punishment prohibited by the ex post facto clause" and holding there was no violation when the change in law was effective at the time the right to bail was considered"); United States v. Miller, 753 F.2d 19, 21 (3d Cir. 1985) (holding that application of the Bail Reform Act of 1984 to defendants whose alleged criminal events took place before the act did not violate the Ex Post Facto Clause, which applies "only to laws which impose 'punishment,'" and stating that the availability of bail, "albeit extremely important to the individual involved, is a procedural issue rather than a type of punishment to which the Ex Post Facto Clauses apply"); United States v. Molt, 758 F.2d 1198, 1201 (7th Cir. 1985) (holding that the application of the Bail Reform Act did not violate the Ex Post Facto Clause by "merely ma[king] it harder to get bail).

regardless of the date of the commencement of the action." Id. at 386. After that rule change, the trial court revoked Ziglar's previously granted bond based on the retroactive application of another rule, Rule 7.2(c), Ala. R. Crim. P., which provided grounds for a trial court to deny an appeal bond. Id. The Alabama Supreme Court then granted Ziglar's petition for a writ of mandamus and ordered the trial court to rescind its revocation order.

There are several differences between Ziglar's case and Carter's case. First, the Alabama Supreme Court, which promulgated Rule 1.5 under its rule-making authority, stated that, although Rule 7.2 had been applied to Ziglar retroactively by the trial court, "[t]he change of Rule 1.5, Ala. R. Crim. P., was not intended to be applied ex post facto in violation of Art. 1, § 7, Alabama Constitution (1901), and Art. I, § 9, United States Constitution." Id. at 387 (emphasis added). Second, "at the time [Ziglar] was granted bail," he had "a statutory right to bail." Id. (emphasis added.) Third, Ziglar was released on an appeal bond according to a state statute, § 12-22-170, Ala. Code 1975, which provided for a defendant's release on bail pending appeal "[i]f the sentence is for a term not exceeding 20 years." Id. at 387. Fourth, Ziglar argued that the revocation

29

of his bond, because of the amendment to a rule that became effective after he was granted an appeal bond, constituted "a denial of his <u>due process</u> rights, both substantive and procedural." <u>Id.</u> (Emphasis added.) The Alabama Supreme Court held that the change to Rule 1.5 "had an ex post facto <u>application</u> under the facts in [Ziglar's] case, violating the defendant's <u>due process</u> rights." <u>Id.</u> (emphasis added).

Contrary to the circumstances in <u>Ziglar</u>, Aniah's Law was intended to have retroactive force and effect. In fact, § 15-13-3, Ala. Code 1975, even allows for a pretrial-detention hearing to be "reopened, before or after a determination by the court, at any time prior to trial if the court finds that information exists that was not known by the movant at the time of the pretrial detention hearing." In addition, the changes in Alabama law that made first-degree rape no longer "bailable" occurred <u>before</u> Carter's initial-appearance hearing not <u>after</u> his hearing as in <u>Ziglar</u>. <u>Compare</u> <u>United States v. Ballone</u>, 762 F.2d 1381, 1383 (11th Cir. 1985) (holding that there was no ex post facto violation when the changes in the right to bail under the Bail Reform Act were applicable <u>at the time the right accrued</u>) <u>with</u> <u>United States v. Fernandez-Toledo</u>, 749 F.2d 703, 705 (11th Cir. 1985) (declining to allow retroactive application of the

30

change in the Bail Reform Act to defendants whose "rights to bail <u>had</u> <u>already vested</u>, i.e., it was an antecedent right existing before the change in the law" (emphasis added)). Indeed, at the time of both Carter's initial-appearance hearing and his later "reopened" hearing, which resulted in the filing of this petition (because the trial court denied his motion to reduce his bail to the minimum amount), Carter had neither a constitutional right nor a statutory right to bail that was taken away ex post facto. Moreover, the change that made his offense no longer "bailable" was instituted, not by rule alone, but by a change to the Alabama Constitution and the related bail statutes. Finally, unlike Ziglar, Carter has not alleged a due-process violation but a violation of the Ex Post Facto Clauses. And, as already explained, the change in Alabama bail laws by Aniah's Law does not violate the Ex post Facto Clauses.

In sum, the change in Alabama's bail laws making first-degree rape no longer "bailable" "does not affect a substantial right" and does "'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" <u>Weaver v. Graham</u>, 450 U.S. 24, 31 n. 12 (1981) (quoting <u>Hopt v. Utah</u>, 110 U.S. 574, 590 (1884)).

31

Thus, applying Aniah's Law retroactively to Carter for a charged offense that occurred before the effective date of that law does not violate the Ex Post Facto Clause of either the Alabama Constitution or the United States Constitution.

Conclusion

Carter has not established that he is entitled to have his bail reset to the minimum amount required by the schedule in Rule 7.2(b), Ala. R. Crim. P., because his offense was not "bailable" at the time of his 72-hour initial-appearance hearing. Thus, Carter was not entitled to any remedy provided by Rule 4.3(b)(3), Ala. R. Crim. P., based on any alleged failure at his initial-appearance hearing to comport with Rule 4.3 because it was conducted by a magistrate. Therefore, we deny Carter's petition.

PETITION DENIED.

Windom, P.J., and Kellum, McCool, and Minor, JJ., concur in the result.